IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:16CR140 |
| | ) | |
| PETER ROMAR, | ) | Hon. Claude M. Hilton |
| (a/k/a "PIERRE ROMAR"), | ) | |
| | ) | |
| Defendant | | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO GOVERNMENT REQUEST TO CERTIFY CASE AS COMPLEX UNDER THE SPEEDY TRIAL ACT**

Comes now Peter Romar, by counsel, and respectfully submits this Memorandum in Opposition to the government's request to certify this case as complex under the Speedy Trial Act. This case is neither especially complicated nor unusual, and the time conferred by the Speedy Trial Act is more than sufficient to prepare for trial. Specifically, the indictment alleges that Mr. Romar committed crimes by receiving and then transferring money from his personal bank account on two or three occasions. Given the simplicity of the alleged conduct, the Court should schedule the trial within the 70-day time period provided in the Speedy Trial Act.

**I.   The Speedy Trial Act Requires Trial Within 70 days Because the Ends of Justice Do Not Support a Continuance Given the Basic Nature of the Allegations in the Indictment**

Under the Speedy Trial Act, "the trial of a defendant charged in an information or indictment . . . shall commence within seventy days from the filing date . . . or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Although the Government seeks to avoid this ordinary application of the Act, the provision on which it relies applies *only* where "the ends of justice served by the granting of such a continuance outweigh the best interests of the public

and the defendant in a speedy trial." 18 U.S.C. § 3161(7)(A). Specifically, the Government's motion should *not* be granted unless it can show that a "case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." 18 U.S.C. § 3161(7)(B)(ii).

Notably, "[n]o continuance [under this section] shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government. 18 U.S.C. § 3161(7)(C). Indeed, any continuances under this exception must be "reasonably related to the actual needs of the case, and should not be used either as a calendar control device or as a means of circumventing the requirements of the Speedy Trial Act." *See United States v. LoFranco*, 818 F.2d 276, 277 (2d Cir. 1987). Thus, if a case is "not particularly unusual or complex," a continuance should not be granted under this exception. *See, e.g.*, *United States v. Olajide*, 978 F.2d 1257, at *4 (4th Cir. 1992) (unpublished) (noting, in a case involving a multi-victim bank fraud scheme with transfers of funds both in the United States and in London by an illegal alien from Nigeria living in Brooklyn, that, despite "international aspects[,] the case [was] not particularly unusual or complex," and that it was "possible . . . that the complexity alone did not warrant much, if any continuance").[1]

Here, the Government has failed to show that this case is so "particularly unusual or complex" as to warrant a continuance beyond the Speedy Trial Act. Notably, this is a single-

---

[1] If the Court does grant such a continuance, it must also make "on-the-record findings and specif[y] in some detail certain factors that a judge must consider in making those findings." *See Zedner v. United States*, 547 U.S. 489, 508-09 (2006) (refusing to apply a harmless error analysis in order to avoid "a danger that such continuances could get out of hand and subvert the Act's detailed scheme").

2

defendant case involving three conspiracy charges based on the Defendant's minimal role in another alleged conspirator's extortion and hacking scheme. Indeed, despite the alleged breadth of the scheme, the scope of criminal conduct attributed directly to Mr. Romar by the Indictment appears to be limited to Mr. Romar's acceptance of payments from three victims on three disparate occasions and his transferal of the money received to other alleged conspirators in Syria.

The major issue in this case will be whether Mr. Romar had knowledge of and intent to join the conspiracy. Mr. Romar does not anticipate any novel questions of fact or law. In fact, Mr. Romar's communications with his alleged conspirators have been in the government's custody since at least the Fall of 2015, as evidenced by the date of the Affidavit in Support of the Criminal Complaint. At bottom, this is a run-of-the-mill conspiracy case that does not warrant certification as complex or unusual. *Cf. United States v. Reavis*, 48 F.3d 763, 771 (4th Cir. 1995) (finding a case complex where it involved "six defendants, eight attorneys, a thirty-three count indictment, and the possibility of prosecution under a seldom-used federal death penalty statute").

## II. The Government's Proffered Reasons Do Not Support a Continuance

The Government's bases for seeking certification do not alter the conclusion that a continuance is unwarranted. Specifically, the government maintains that this case is complex because: (1) it seized multiple laptops and telephones; (2) many relevant communications are in the Arabic language; and (3) the government has identified potentially relevant classified information. None of these rationales supports extending the trial date in this case.

First, the government fails to mention that it already obtained email and other communications between Mr. Romar and his alleged co-conspirators in 2015 from electronic

service providers, and has already translated relevant portions of those communications. And while the Government may have obtained custody of multiple laptops and telephones more recently, the Government has not made any showing that such devices are *likely* to contain evidence relevant to this case, or that they contain more communications than those that it obtained more than 10 months ago. To the contrary, the Government notes only that the "electronic media is *potentially* significant since they are the *potential* vehicles through which the conspirators communicated." Gov't Mot. at 3 (emphasis added).

Moreover, multiple pieces of electronic media are routinely found in almost every fraud case. Thus, given that this case appears to involve only a few isolated communications between Mr. Romar and the other conspirators, and considering that the Government has not proffered any specific evidence that will likely be found in the electronic media, this factor does not serve to differentiate this action from the average case. *See Zedner*, 547 U.S. at 508-09 (noting "the danger that such continuances could get out of hand and subvert the Act's detailed scheme").

Second, while Mr. Romar may speak multiple languages, so too do defendants in many fraud cases. And the Government has already identified relevant communications that it translated prior to the filing of the Criminal Complaint. Gov't Mot. at 3. It gives no reason why additional translations cannot be done within the normal trial schedule.

Finally, while the Government may suggest that classified information still needs to be reviewed, none of it likely has any specific relation to Mr. Romar, who is alleged to have merely transferred money in his own name from his own bank account on a few discrete occasions. It also concedes that a "large portion" of classified material has already been evaluated. Gov't Mot. at 3-4. Again, the central issue in this case will be whether Mr. Romar had knowledge and intent to join the alleged conspiracy. Resolution of that issue will revolve around Mr. Romar's

communications and actions, and should not implicate classified material. Merely referencing an unidentified set of classified information does not make this case complex.

    In short, this is a run-of-the-mill conspiracy case, involving a single defendant and three counts, that will focus on issues present in almost every conspiracy case. It is not "particularly unusual or complex," and both Mr. Romar's and the public's interest in a speedy trial is not outweighed by the need for a continuance. Accordingly, Mr. Romar respectfully requests that the Court deny any Government request for a trial date beyond 70 days from the issuance of the indictment.

Respectfully submitted,

PETER ROMAR
By Counsel

Dated: June 16, 2016

_____/s/_____
Geremy C. Kamens

Geremy C. Kamens, Esq.
Virginia Bar Number 41596
Counsel for Peter Romar
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0848 (T)
(703) 600-0880 (F)
Geremy_Kamens@fd.org (e-mail)

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 16, 2016, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Maya D. Song
Brandon L. Van Grack
Assistant U.S. Attorneys
Eastern District of Virginia
2100 Jamieson Ave
Alexandria, VA 22314
(703) 299-3700
maya.song@usdoj.gov
brandon.van.grack2@usdoj.gov

                                                                   _____/s/_____
                                                              Geremy C. Kamens, Esq.
                                                              Virginia Bar Number 41596
                                                              Counsel for Peter Romar
                                                              Office of the Federal Public Defender
                                                             1650 King Street, Suite 500
                                                             Alexandria, Virginia 22314
                                                             (703) 600-0848 (T)
                                                             (703) 600-0880 (F)
                                                             Geremy_Kamens@fd.org (e-mail)