**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No.  1:16CR140** |
| | ) | |
| **PETER ROMAR,** | ) | **Hon. Claude M. Hilton** |
| **(a/k/a "PIERRE ROMAR"),** | ) | |
| | ) | |
| **Defendant** | | |

## DEFENDANT'S MOTION AND MEMORANDUM IN SUPPORT TO DISMISS COUNTS ONE AND THREE OF THE INDICTMENT FOR IMPROPER VENUE

COMES NOW the Defendant, Peter Romar, by and through counsel, and respectfully moves this Honorable Court to dismiss Counts One and Three of the Indictment because venue is improper in the Eastern District of Virginia.

## INTRODUCTION

Despite alleging a far-reaching conspiracy involving over 14 victims, numerous allegedly criminal acts, and involving over $500,000, the Government chose to indict this case in a District with almost no connection to any of the conduct charged.  In doing so, the Government ignores a bedrock principle of venue in criminal cases—that the case must be brought in a place where the essential conduct of the charged offense took place.  Here, with respect to Counts One and Three of the Indictment, no alleged conspirator took any action in this District that relates to the essential conduct of those offenses.  Rather, the alleged conspirators' tangential and tenuous contact with this District related to, at most, "circumstance elements" of the conspiracy that fail as a matter of law to properly establish venue.  Thus, because no conduct essential to the elements of the charged conspiracy took place here, venue on Counts One and Three in the Eastern District of Virginia is improper.  Those Counts should be dismissed.

**FACTUAL BACKGROUND**

On June 8, 2016, a grand jury returned a three-count Indictment against Mr. Romar, charging him with: (1) conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371, specifically conspiracy to (a) transmit communications containing threats to injure the property or reputation of another with the intent to extort in violation of 18 U.S.C. § 875(d); and (b) receive any money or property obtained from the extortionate transmission in violation of 18 U.S.C. § 880 (Count One); (2) conspiracy to commit unauthorized computer intrusions in violation of 18 U.S.C. § 1030(b) (Count Two); and (3) conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h) (Count Three). Doc. No. 17 ("Indict.").

The Indictment alleges a far-reaching conspiracy purportedly beginning in or around July 2013 whereby Mr. Romar and two other co-conspirators "extorted or attempted to extort at least 14 different victims in the United States and abroad, after successfully gaining unauthorized access to the victims' computer networks." Indict. ¶ 7. According to the Indictment, "members of the Conspiracy demanded more than $500,000 from those 14 victims, although they accepted smaller amounts in many circumstances." *Id.* With respect to Mr. Romar in particular, the Indictment alleges that he, while residing in Germany, "would receive payments that Co-Conspirator 1 demanded from victims that could not be transmitted directly to the members of the Conspiracy located in Syria." Indict. ¶ 16(D).

Despite these wide-ranging allegations, involving numerous victims, multiple threats, and over $500,000 in potential proceeds, the Indictment alleges almost no connection to the Eastern District of Virginia. *See* Indict., *generally*. The Indictment does not allege that any of the

2

conspirators were located in, or even ever set foot in Virginia.  *See id.*[1]  Nor does it allege that

any threats or other attempts at extortion occurred here.  *See* Indict. ¶ 17.  The Indictment does

not allege that any of the 14 victims actually resided in or were otherwise located in this District.

*See* Indict. ¶¶ 7-12.  The Indictment does not even allege that any money was transferred or

otherwise paid from here.  *See* Indict. ¶ 17.  To the contrary, the *only* connection to the Eastern

District of Virginia alleged by the Indictment is the existence of a single server located in

Ashburn, Virginia.  *See* Indict. ¶ 10.  This single server was "used and controlled" by a single

victim who did not possess any offices in this District (although it did have offices "in the United

States"), *see* Indict. ¶¶ 10, 17(Y), and who did not pay any of the conspirators even a single

dollar.  *See* Indict. ¶ 17(BB)-(CC) (noting that this victim rejected Co-Conspirator 1's proposal

and refused to pay any money).

Despite this single tenuous and tangential contact with this District, the Government still

chose to indict Mr. Romar here.  Because the Indictment cannot properly allege the occurrence

of any *essential conduct* giving rise to the applicable counts in the Eastern District of Virginia,

venue is improper here, and this Motion to Dismiss should be granted with respect to Counts

One and Three.

## ARGUMENT

### I.    Venue May Only Lie in a Place where the Essential Conduct Elements of a Crime Took Place

"Proper venue in a criminal prosecution is a constitutional right."  *United States v.*

*Bowens*, 224 F.3d 302, 308 (4th Cir. 2000) (quoting Art. III, § 2, cl. 3).  Indeed, "[t]he

Constitution twice safeguards the defendant's venue right:  Article III, § 2, cl. 3, instructs that

'Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been

---

[1] In fact, of the three alleged co-conspirators, two were located in Syria, and the third, Mr. Romar, resided in Germany.  Indict. ¶¶ 4-5.

committed'; [and] the Sixth Amendment calls for trial 'by an impartial jury of the State and district wherein the crime shall have been committed.'" *United States v. Cabrales*, 524 U.S. 1, 6 (1998). As a result of this constitutional imperative, "[i]t is settled that, in a criminal case, venue must be narrowly construed." *United States v. Jefferson*, 674 F.3d 332, 365 (4th Cir. 2012).

Moreover, "[w]hen multiple counts are alleged in an indictment, venue must be proper on each count." *United States v. Villarini*, 238 F.3d 530, 533 (4th Cir. 2001). "The government bears the burden of proving venue (by a preponderance of the evidence)." *Bowens*, 224 F.3d at 308.

"When Congress does not indicate just where it considers the place of the crime to be, the place 'must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *Bowens*, 224 F.3d at 308. This requires a two-part inquiry: "[1] a court must identify the conduct constituting the offense (the nature of the crime) and then [2] discern the location of the commission of the criminal acts." *Id.* at 308-09 (quoting *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999)).

Importantly, this first prong serves "to limit venue in a criminal trial to the place of the essential *conduct* elements of the offense." *Bowens*, 224 F.3d at 308 (emphasis in original); *see also Villarini*, 238 F.3d at 533-34 ("Venue on a count is proper only in a district in which an essential conduct element of the offense took place."). This means that "[v]enue does *not* necessarily lie … in every district where an essential element of the offense has transpired." *Bowens*, 224 F.3d at 309 (emphasis added). To the contrary, unless an essential *conduct* element took place in a district, venue is improper there, regardless of where any "other essential elements of the crime occur[red]." *Id.*; *see also id.* at 310 (holding that "the only essential conduct element of harboring or concealing a fugitive from arrest under 18 U.S.C. § 1071 is the

4

act of harboring or concealing" and that the issuance of a warrant for a person's arrest was

"merely a circumstance element (albeit an essential element) of the harboring offense");

*Jefferson*, 674 F.3d at 366 (reversing conviction due to improper venue where "[t]he scheme to

defraud [was] clearly an essential element, but not an essential *conduct* element, of wire (or mail)

fraud") (emphasis in original).

This limitation on venue to the place where an essential conduct element took place

applies with equal force in conspiracy cases. Indeed, while "in a conspiracy charge, venue is

proper for all defendants wherever the agreement was made or wherever any overt act in

furtherance of the conspiracy transpires," *see Bowens*, 224 F.3d at 311 n.4, such overt acts must

still relate to the essential conduct elements of the applicable offense to make venue proper. *See*

*United States v. Anyakoha*, 188 F.3d 503, 1999 WL 635654, at *1 (4th Cir. Aug. 20, 1999)

(unpublished) ("[T]here was no evidence that a co-conspirator possessed the heroin in the

Eastern District of Virginia, so Anyakoha's possession conviction cannot be based on an aider

and abettor theory.").[2] Any other holding would allow the Government to circumvent the

Constitution's explicit mandate requiring venue to lie "where the crime [was] committed" merely

by alleging an agreement between two parties. *See Bowens*, 224 F.3d at 308.

---

[2] Under 18 U.S.C. § 3238, "when a crime is committed outside of 'any particular State or district,' venue will be deemed appropriate in the district in which the offender 'is arrested or is first brought.'" *United States v. Holmes*, 699 F. Supp. 2d 818, 825-26 (E.D. Va. 2010), *aff'd* 670 F.3d 586 (4th Cir. 2012). However, to fall within § 3238's ambit, the essential conduct elements must have been committed abroad, and *not* in any state. *See United States v. Levy Auto Parts*, 787 F.2d 946, 952 (4th Cir. 1986) (noting that venue would *not* have been proper under § 3238 if "crucial activity would have occurred in the District of Columbia," rather than in Canada and Pakistan); *see also Travis v. United States*, 364 U.S. 631, 634 (1961) ("[V]enue provisions in Acts of Congress should not be so freely construed as to give the Government the choice of 'a tribunal favorable' to it.").

Here, as discussed below, because no essential conduct elements of the applicable offenses by *any* conspirator took place in the Eastern District of Virginia, venue is *not* proper in this District with respect to Counts One and Three.

## II.   Venue on Count I Is Improper Because No Overt Acts Essential to the Charged Conspiracy Took Place in the Eastern District of Virginia

As none of the alleged overt acts charged in Count One relate to the essential conduct elements of the charged conspiracy, this Count should be dismissed for improper venue.  "To prove a conspiracy under 18 U.S.C. § 371, the government must establish an agreement to commit an offense, willing participation by the defendant, and an overt act in furtherance of the conspiracy."  *United States v. Tucker*, 376 F.3d 236, 238 (4th Cir. 2004).  Notably, a § 371 "conspiracy conviction cannot be sustained unless the government establishe[s] beyond a reasonable doubt that the defendant had the *specific intent* to violate the substantive statute" that is the object of the conspiracy.  *United States v. Johnson*, --- F. Supp. 3d ---, 2016 WL 775772, at *5 (E.D. Va. Feb. 25, 2016) (emphasis in original).

For this conspiracy, the substantive statutes at issue are (1) 18 U.S.C. § 875(d), which provides that [w]hoever, with intent to extort from any person … or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another" violates the statute; and (2) 18 U.S.C. § 880, which provides that a person violates the statute when he "receives, possesses, conceals, or disposes of any money or other property which was obtained from the commission of any offense under this chapter that is punishable by imprisonment for more than 1 year, knowing the same to have been unlawfully obtained."

Based on the contours of the charged conspiracy, the essential conduct elements to which the overt acts of the charged conspiracy must relate are (1) the *transmission* of threatening

communications in interstate commerce, *see* 18 U.S.C. § 875(d), or (2) the *receipt, possession, concealment, or disposal* of money or property received as a result of those communications. *See* 18 U.S.C. § 880; *see also Jefferson*, 674 F.3d at 367 ("a conduct element is one of action, such as the act of putting a letter in the mailbox or making a telephone call'"). And while "the conduct of anyone with whom [the defendant] shares liability as a principal" is also considered, that conduct (by any co-conspirator) must still relate to the essential conduct elements of the conspiracy. *See Bowens*, 224 F.3d at 311 n.4; *Anyakoha*, 188 F.3d at 503.

Here, neither the agreement to commit the charged conspiracy nor any overt acts in furtherance of the essential conduct elements of the conspiracy took place in the Eastern District of Virginia. Indeed, the Indictment alleges that, during the relevant time periods, the three co-conspirators were located in Syria and Germany. Indict. ¶¶ 4-5. It does *not* allege any physical presence by the co-conspirators of any kind in this District. *See* Indict., *generally*. Thus, because the alleged co-conspirators never set foot in the Eastern District of Virginia, by definition, the alleged agreement between the co-conspirators could not have been formed here. *See, e.g.*, *United States v. Clenney*, 434 F.3d 780, 782 (5th Cir. 2005) (noting that "the intent element [of an offense] is a mental state that cannot have been 'committed' anywhere but where [the defendant] was physically present").

Nor does the Indictment allege that any overt acts took place in this District. Notably, the Indictment does *not* allege that any extortionate threats were transmitted either to or from this District, or that any victims had any offices in this District where they might have received such threats. *See* Indict. ¶¶ 8-12, 17. Likewise, the Indictment does *not* allege that any funds were actually sent from or received in the Eastern District of Virginia, or that any co-conspirator ever took any action in this District in preparation for "receiv[ing], possess[ing], conceal[ing], or

dispos[ing] of any money or other property" obtained as a result of the co-conspirators' alleged threats. *See* Indict. ¶ 17; 18 U.S.C. § 880; Indict. ¶ 17.

To the contrary, the Indictment only alleges a single act occurring a single time in this District—that, on or about March 7, 2014, one co-conspirator "gained unauthorized access" to a single server located in Ashburn, Virginia. *See* Indict. ¶ 17(Y). But gaining "unauthorized access" to a computer server does not implicate the essential conduct elements of a conspiracy to transmit extortionate communications in interstate commerce or to receive the proceeds of such communications, because such conduct is irrelevant to the commission of the offenses that are the object of the conspiracy. *See Jefferson*, 674 F.3d at 368 ("The district court therefore erred in relying on Jefferson's 'acts directly or causally connected to the wire transmission' as providing venue, because aside from the transmission itself, there are no acts necessary to establish the crime of wire fraud."). Gaining unauthorized access to the server at issue may have been "anterior criminal conduct" that eventually led to the transmission of extortionate threats contemplated by the conspiracy, but as a matter of law, this "circumstance element" is insufficient to make venue proper in this District. *See Villarini*, 238 F.3d at 534-35 (holding that venue was improper in Virginia for a charge of money laundering, even though the defendant was also charged with transporting the criminally generated funds from Virginia); *Jefferson*, 674 F.3d at 367-68 (holding that it was irrelevant for venue purposes that the defendant "devis[ed] and participat[ed] in a scheme to defraud" in the Eastern District of Virginia because "[i]t is the physical act of transmitting the wire communication for the purpose of executing the fraud scheme that creates a punishable offense, not merely 'the existence of a scheme to defraud.'").

The location of this server may have some relevance for other counts (*i.e.*, conspiracy to commit unauthorized computer intrusions in violation of 18 U.S.C. § 1030(b)), but it has *nothing*

to do with the essential conduct required for a conspiracy to violate 18 U.S.C. §§ 775(d) and 880. *See Villarini*, 238 F.3d at 535 ("Even assuming, however, that the indictment may be read as implicitly alleging that Villarini transported the money from Virginia to Florida, it certainly contains no allegation that such transportation was part of a scheme to launder the money."); *Jefferson*, 674 F.3d at 368 ("The government's position on venue ignores that the crime charged in Count 10 was not the bribery scheme, but the offense of wire fraud occasioned by a single telephone call.  Its distinct parts—the making and completion—occurred in two different localities, neither of which was within the Eastern District of Virginia.").

In short, venue might be proper in the District where the company receiving the threatening communications was located or in the place where any of the defendants received the proceeds of their alleged crimes.  But because no overt acts in furtherance of the essential conduct of the charged conspiracy took place in the Eastern District of Virginia, Count One should be dismissed for improper venue.

## III.  Count Three Should Be Dismissed Because No Financial Transactions or Other Acts in Furtherance of a Money Laundering Scheme Took Place in the Eastern District of Virginia

"Federal law defines money laundering as 'a monetary transaction in criminally derived property that is … derived from specified unlawful activity.'"  *United States v. Butler*, 211 F.3d 826, 829 (4th Cir. 2000).  Notably, "Congress did not fashion the money laundering statute to create a new source of criminal liability for every fraudulent monetary transaction."  *Id.*  Rather, "Congress targeted only those transactions occurring after proceeds have been obtained from the underlying unlawful activity."  *Id.*

Consonant with this Congressional mandate, it is well-established that, for purposes of venue, "the money laundering statute prohibits only the financial transaction and 'not the anterior criminal conduct' that produced the funds that were laundered."  *Villarini*, 238 F.3d at 534

(quoting *Cabrales*, 524 U.S. at 7).  This means that venue for money laundering offenses is tied to the place where the applicable financial transactions occurred.  *See id.*  And "the 'existence of criminally generated proceeds' [is] only a 'circumstance element' of money laundering in that it [is] established by proof of a crime that preceded the money laundering conduct."  *Id.* at 535; *see also id.* ("[T]he mere fact that proceeds were criminally generated in a particular district is not sufficient, standing alone, to establish proper venue in that district for a charge of laundering the money.").

Here, the Indictment does not allege a single monetary transaction that involved the Eastern District of Virginia in any way.  *See* Indict., *generally*.  In fact, Count Three incorporates only two specific financial transactions in describing the alleged conspiracy, *see* Indict. ¶ 22, one of which involved a victim located in California, and the other of which involved a victim located in Switzerland (and both of which involved sending money to Mr. Romar in Germany).  *See* Indict. ¶¶ 9, 12, 22.  Thus, while venue for this offense might be proper in California, dismissal is required in the Eastern District of Virginia.  *See Villarini*, 238 F.3d at 534-35.[3]

Notably, while 18 U.S.C. § 1956(i)(2) provides that a money laundering conspiracy "may be brought … in any other district where an act in furtherance of the … conspiracy took place," this provision is irrelevant here because no acts in furtherance of a *conspiracy to launder money* took place in this District.  As described above, the only connection to the Eastern District of Virginia alleged by the Indictment is the existence of a single server in Ashburn, Virginia, "used and controlled" by a single victim of the extortion scheme (with its offices elsewhere in the

---

[3] In his Motion to Dismiss for Failure to State an Offense, Mr. Romar argues that this Count must be dismissed in its entirety because no conduct occurred in the United States sufficient to avoid the extraterritorial prohibitions contained in the money laundering statute.  *See* Motion at 18-23.  If the Court denies this Motion, then venue is still improper in the Eastern District of Virginia, because the applicable conduct took place in the district where the victims sent the money at issue, *i.e.*, in California.

United States).  Indict. ¶ 10.  This victim did not have any offices in this District; nor was it present here for any of the events that allegedly took place.  *See id.*

While the presence of this server *might* be relevant to a conspiracy to commit the "crime that preceded the money laundering conduct,"[4] it has nothing to do with a money laundering scheme that took place only *after* the alleged extortion produced illicit proceeds.  *See* Indict. ¶ 16(D) (noting that Mr. Romar would only receive payments in Germany "that could not be transmitted directly to the members of the Conspiracy located in Syria"); *Villarini*, 238 F.3d at 535 (rejecting the argument that venue was proper in Virginia even though the defendant was "charged with transporting the criminally generated funds from the district" because even if "Villarini transported the money from Virginia to Florida, [the indictment] … contains no allegation that such transportation was part of a scheme to launder the money").

Nor does 18 U.S.C. § 3238 help the Government, because one of the transactions explicitly charged as part of the money laundering conspiracy was initiated in California.  *See* Indict. ¶¶ 2, 22 (B) (noting that Mr. Romar received a Western Union payment from a victim located in California).  As such, to the extent this conduct is sufficient to state an offense, the "crucial activity" occurred in the United States, *not* outside of any particular State or district, as is required to utilize the statute.  *See Levy Auto Parts*, 787 F.2d at 952; *Holmes*, 699 F. Supp. 2d at 825-26.[5]

---

[4] Although not incorporated within Count Three, the Indictment elsewhere alleges that a conspirator gained unauthorized access to the server before seeking to extort the victim to whom it belonged.  *See* Indict. ¶ 17(Y).

[5] As explained in Mr. Romar's Motion to Dismiss for Failure to State an Offense, to the extent the conduct at issue did occur wholly outside of any particular State or District, then it would run afoul of the money laundering statute's extraterritorial prohibitions, and require dismissal in any event.  *See* Motion at 18-23.

11

At bottom, given that no acts by *any* co-conspirator in furtherance of the alleged money laundering conspiracy occurred in the Eastern District of Virginia, venue is improper in this District.  Mr. Romar might be prosecuted for this offense in California, but he cannot be prosecuted in the Eastern District of Virginia.  *See Jefferson*, 674 F.3d at 369 ("Representative Jefferson could have been—and perhaps yet could be—prosecuted on Count 10 in the district in Kentucky where his phone call was received. … But Jefferson could not, on these facts, be properly prosecuted on Count 10 in the Eastern District of Virginia."); *see also United States v. Stewart*, 256 F.3d 231, 241 n.3 (4th Cir. 2001) (noting that venue on a conspiracy count is improper absent evidence (or allegations) "demonstrating that Stewart, who had, at best, a very minor role in the alleged conspiracy, knowingly and voluntarily entered into a confederacy involving the Eastern District of Virginia").

## CONCLUSION

For the reasons stated herein, Mr. Romar respectfully requests that the Court dismiss Counts One and Three of the Indictment for improper venue.

Respectfully submitted,

PETER ROMAR
By Counsel

_____
           -s-
Geremy C. Kamens

Geremy C. Kamens, Esq.
Virginia Bar Number 41596
Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia  22314
(703) 600-0848 (T)
(703) 600-0880 (F)
Geremy_Kamens@fd.org (e-mail)

AND

Rory E. Adams, Esq.
Virginia Bar Number 76452
Manatt, Phelps, & Phillips LLP
1050 Connecticut Ave., NW, Suite 600
Washington, DC 20036
(202) 585-6614 (T)
(202) 585-6600 (F)
radams@manatt.com (e-mail)

Dated: July 18, 2016

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 18, 2016, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Maya D. Song
Brandon L. Van Grack
Assistant U.S. Attorneys
Eastern District of Virginia
2100 Jamieson Ave
Alexandria, VA 22314
(703) 299-3700
maya.song@usdoj.gov
brandon.van.grack2@usdoj.gov

_____-s-_____
Geremy C. Kamens, Esq.
Virginia Bar Number 41596
Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia  22314
(703) 600-0848 (T)
(703) 600-0880 (F)
Geremy_Kamens@fd.org (e-mail)

14