**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Criminal No.  1:16CR140** |
| | ) | |
| PETER ROMAR, | ) | **Hon. Claude M. Hilton** |
| (a/k/a "PIERRE ROMAR"), | ) | |
| | ) | |
| Defendant | | |

## DEFENDANT'S MOTION AND MEMORANDUM IN SUPPORT TO DISMISS INDICTMENT FOR FAILURE TO STATE AN OFFENSE

COMES NOW the Defendant, Peter Romar, by and through counsel, and respectfully moves this Honorable Court to dismiss Count Three of the Indictment, as well as portions of Counts One and Two for failure to state an offense, based on the extraterritorial nature of the conduct alleged.

## INTRODUCTION

The Government indicted Mr. Romar on three conspiracy counts, based on an almost entirely extraterritorial scheme, without paying any heed to whether the statutes involved apply overseas.  Under recent United States Supreme Court precedent, however, extraterritorial conduct is not "indictable" if either the applicable statute only applies domestically or if the charged conduct goes beyond the explicit extraterritorial authorization provided.  Moreover, under the "presumption against extraterritoriality," any such authorizations must be narrowly construed and restricted to their terms.  Any charges based on extraterritorial conduct that have not been "affirmatively and unmistakably" authorized by Congress must be dismissed for failure to state an offense. Fed. R. Crim. P. 12(b)(1) (A party in a criminal case may "raise by pretrial

motion any defense, objection, or request that the court can determine without a trial on the merits.").

Here, each of the three Counts charged by the Government fail, either in whole or in part, under the extraterritorial prohibitions at issue. First, as an object of the charged conspiracy in Count One, the Government alleges a scheme under 18 U.S.C. § 880 to receive money from an extortion scheme. Yet this statute does *not* apply extraterritorially, and the receipt of all of the funds at issue occurred abroad. Thus, this conduct is not "indictable," and this portion of Count One must be dismissed. Similarly, as another object of the conspiracy charged in Count One, the Government alleges a scheme under 18 U.S.C. § 875(d) to transmit extortionate communications in interstate commerce. Again, this statute does not apply extraterritorially. Nevertheless, the Government charged such a scheme against two victims who reside in Europe and who received the allegedly extortionate transmissions there. Because the extortionate transmissions that are the focus of a § 875(d) offense were both sent and received overseas, the portions of Count One related to Victims 1 and 5 must be dismissed.

Second, Count Two of the Indictment charges a conspiracy to commit unauthorized computer intrusions in violation of 18 U.S.C. § 1030(b). This offense requires that such intrusions be made against "protected computers." Because computers existing entirely overseas, without any connection to the United States, do *not* fall within this definition, the portions of the Indictment related to Victims 1 and 5 must again be dismissed.

Finally, Count Three of the Indictment alleges a conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h). But the Government's allegations here ignore the provisions of 18 U.S.C. § 1956(f), which serves to explicitly limit "extraterritorial jurisdiction over" money laundering conspiracies to those involving (a) prohibited conduct

occurring in part in the United States, and (b) related transactions that exceed $10,000. The Government's allegations both (a) fail to identify any transactions in Count Three involving funds over $10,000, and (b) fail to identify any conduct actually prohibited by the money laundering statute (as opposed to conduct completing the underlying criminal offenses that *preceded* the money laundering scheme at issue). Either of these deficiencies is sufficient, in-and-of-itself, to require the dismissal of Count Three in its entirety.

In short, the presumption against extraterritoriality acts to limit each of the Government's charges to only that extraterritorial conduct clearly and affirmatively authorized by Congress. Where, as here, the Government has gone beyond those limitations, it has failed to charge indictable violations of the statutes and dismissal is required. Because Mr. Romar cannot be charged and convicted in a United States Court for the conduct as alleged in the Indictment, the Court should dismiss (1) the 18 U.S.C. § 880 object of the conspiracy in Count One; (2) those portions of the § 875(d) conspiracy in Count One related to Victims 1 and 5; (3) those portions of Count Two related to Victims 1 and 5; and (4) Count Three in its entirety for failure to state an offense.

## FACTUAL BACKGROUND

On June 8, 2016, a grand jury returned a three-count Indictment against Mr. Romar, charging him with: (1) conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371, specifically conspiracy to (a) transmit communications containing threats to injure the property or reputation of another with the intent to extort in violation of 18 U.S.C. § 875(d); and (b) receive any money or property obtained from the extortionate transmission in violation of 18 U.S.C. § 880 (Count One); (2) conspiracy to commit unauthorized computer intrusions in

violation of 18 U.S.C. § 1030(b) (Count Two); and (3) conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h) (Count Three).  Doc. No. 17 ("Indict.").

Yet in making its allegations, the Indictment pays very little attention to *where* the alleged criminal conduct occurred.  In fact, the Indictment alleges schemes that are almost entirely extraterritorial in nature.  Notably, all of the alleged conspirators were located overseas during the entirety of the scheme.  *See* Indict. ¶¶ 4-5 (noting that two alleged co-conspirators were "Syrian nationals located in Syria" and that Mr. Romar "was a Syrian national residing in Germany").  As such, all of the actions they allegedly took in furtherance of the charged conspiracies took place abroad.

Similarly, two of the victims of the scheme were European companies without any alleged ties to the United States.  *See* Indict. ¶ 8 (noting that "Victim 1 was a Europe-based web hosting company"); ¶ 12 (noting that "Victim 5 was a Switzerland-based web hosting company").  Thus, given the extraterritorial location of both the conspirators and the victims, *any* portion of the charged conspiracies related to these Victims must have occurred abroad.  Even with respect to those victims located in the United States, the Indictment only alleges a single payment from a single victim from the United States to the conspirators located abroad.  *See* Indict. ¶¶ 9, 22(B).  Given their locations, any financial transactions made by any of the conspirators after they received the funds at issue also took place overseas.  *See* Indict. ¶¶ 16(D) (noting that Mr. Romar would receive payments in Germany in order to transfer them to other alleged co-conspirators located in Syria); 17(X) (alleging that Mr. Romar transferred money to Co-Conspirator 1 in Syria through Lebanon).  Because of the extraterritorial nature of the charges at issue, United States Supreme Court precedent requires that Counts One and Two be restricted to only their domestic conduct and that Count Three be dismissed in its entirety.

## STANDARD OF REVIEW

A party in a criminal case may "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). While this authority is not as broad as the summary judgment rule in civil cases—in that the court cannot decide which facts are genuinely in dispute—the court may rule pretrial on purely legal matters. The Court may also rule on the application of law to undisputed facts. *See United States v. Weaver*, 659 F.3d 353, 355 n.* (4th Cir. 2011) (trial court may dismiss indictment under Rule 12(b)(2) [now Rule 12(b)(1)], and in doing so may consider facts beyond those in the indictment where government "does not dispute the pertinent facts").

## ARGUMENT

### I.     Offenses May Not Be Given Extraterritorial Effect Unless Such Reach is Clearly Provided by Congress, and Even then, Prohibitions on Extraterritorial Conduct Must Be Strictly Construed

"It is a basic premise of our legal system that, in general, 'United States law governs domestically but does not rule the world.'" *RJR Nabisco, Inc. v. European Community*, --- U.S. ---, 136 S. Ct. 2090, 2100 (2016). Due to this "presumption against extraterritoriality … [a]bsent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *Id.*; *see also Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) ("'[U]nless there is the affirmative intention of the Congress clearly expressed' to give a statute extraterritorial effect, 'we must presume it is primarily concerned with domestic conditions.'"). "The question is not whether we think 'Congress would have wanted' a statute to apply to foreign conduct 'if it had thought of the situation before the court,' but whether Congress has *affirmatively and unmistakably* instructed that the statute will do so." *RJR Nabisco*, 136 S. Ct. at 2100 (emphasis added). In short, "[w]hen a statute gives no clear

indication of an extraterritorial application, it has none." *Id.*; *see also Morrison*, 561 U.S. at 255 (same).

The Supreme Court has developed a "two-step framework for analyzing extraterritoriality issues" in both criminal and civil statutes. *See RJR Nabisco*, 136 S. Ct. at 2101 (explaining this framework in determining whether RICO applied extraterritorially). First, the court "ask[s] whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear affirmative indication that it applies extraterritorially." *Id.* Notably, even "broad language [in a statute] … that expressly refer[s] to 'foreign commerce'" is insufficient, without more, to allow a statute to apply extraterritorially. *See Morrison*, 561 U.S. at 262-63;[1] *see also Kiobel v. Royal Dutch Petroleum Co.*, --- U.S. ---, 133 S. Ct. 1659, 1665 (2013) ("[I]t is well established that generic terms like 'any' or 'every' do not rebut the presumption against extraterritoriality.").

Second, if the statute is not extraterritorial, the court "determine[s] whether the case involves a domestic application of the statute, and [it] do[es] this by looking to the statute's 'focus.'" *RJR Nabisco*, 136 S. Ct. at 2101. "[I]f the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *Id.*; *see also Morrison*, 561 U.S. at 266 ("[I]t

---

[1] In *Morrison*, the Court reviewed whether § 10(b) of the Securities Exchange Act of 1934 applied to allegations of fraud in connection with securities traded on foreign exchanges. *Morrison*, 561 U.S. at 250. The petitioner argued that a prohibition on the unlawful use of "interstate commerce" showed an intent to apply the statute extraterritorially because "interstate commerce" was defined to include "trade, commerce, transportation, or communication … between any foreign country and any State." *See id.* at 262. The Supreme Court *rejected* this argument, holding that "we have repeatedly held that even statutes that contain broad language in their definitions of 'commerce' that expressly refer to '*foreign*' commerce do not apply abroad." *Id.* at 262-63 (emphasis in original). The Court concluded that "[t]he general reference to foreign commerce in the definition of 'interstate commerce' does not defeat the presumption against extraterritoriality." *Id.* at 263.

is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States.  But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case.") (emphasis in original).  Significantly, where "'all the relevant conduct' regarding th[e] [applicable] violations 'took place outside the United States,'" the court need *not* determine the statute's focus, because the case necessarily represents an impermissible extraterritorial application of the applicable statute.  *See RJR Nabisco*, 136 S. Ct. at 2101; *see also Kiobel*, 133 S. Ct. at 1669 ("On these facts, all the relevant conduct took place outside the United States.").  In such a case, dismissal is warranted.  *See id.*

Alternatively, if the statute does apply abroad, "[t]he scope of an extraterritorial statute … turns on the limits Congress has (or has not) imposed on the statute's foreign application."  *RJR Nabisco*, 136 S. Ct. at 2101.  Importantly, however, "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms."  *Morrison*, 561 U.S. at 265; *see also RJR Nabisco*, 136 S. Ct. at 2102 (same).  Conduct extending beyond that explicitly allowed by the applicable statute *cannot* be used as a basis for a statutory violation.  *See RJR Nabisco*, 136 S. Ct. at 2102 ("If a particular statute does not apply extraterritorially, then conduct committed abroad is not 'indictable' under that statute ….").

Here, as discussed below, each of the Counts charged in the Indictment extends, either in whole or in part, beyond the extraterritorial reach (if any) of the statutes in question.  Application of the principles espoused by the Supreme Court require that wholly extraterritorial conduct be dismissed from Counts One and Two of the Indictment, and that Count Three be dismissed in its entirety.

## II.   Count One Cannot Include, as Objects of the Charged Conspiracy, Extortionate Schemes Taking Place Wholly Outside of the United States or the Receipt of Money or Property Outside of the United States

"There is no doubt that courts may dismiss objects of a charged conspiracy in advance of, or even during, a trial without dismissing the entire conspiracy count." *United States v. Parris*, 88 F. Supp. 2d 555, 561 (E.D. Va. 2000); *see also United States v. Kanchanalak*, 37 F. Supp. 2d 1, 3 (D.D.C. 1999) (dismissing one object of a conspiracy on a motion to dismiss portions of a superseding indictment without dismissing the conspiracy count as a whole). Because Count One extends to wholly extraterritorial conduct prohibited by 18 U.S.C. § 371, those portions of the Count must be dismissed.

Count One charges a conspiracy pursuant to 18 U.S.C. § 371. "The statutory bases for charging conspiracy may be applied extraterritorially" only "where the underlying substantive statutes reach extraterritorial offenses." *See United States v. Mohammad-Omar*, 323 F. App'x 259, 261 n.2 (4th Cir. 2009). Thus, whether Count One's conspiracy charge is "indictable," *see RJR Nabisco*, 136 S. Ct. at 2102, depends on whether the substantive statutes that are the objects of the conspiracy may be applied extraterritorially (and if so, whether the conduct charged falls within that extraterritorial reach). *See Mohammad-Omar*, 323 F. App'x at 261 n.2; *see also United States v. Ali*, 718 F.3d 929, 939 (D.C. Cir. 2013) ("Generally, the extraterritorial reach of an ancillary offense like aiding and abetting or conspiracy is coterminous with that of the underlying criminal statute.").[2]

---

[2] In *Ali*, the District of Columbia Circuit rejected the argument that § 371 "appl[ied] to all federal criminal statutes," because it prohibits conspiracies to commit "any offense against the United States." *See Ali*, 718 F.3d at 942. In fact, the court noted that "the Supreme Court recently rejected the notion that similar language of general application successfully rebuts the presumption against extraterritorial effect." *Id.* (citing *Kiobel*, 133 S. Ct. at 1665). Thus, because the presumption against extraterritorial effect had not been rebutted, the court affirmed the dismissal of the conspiracy count. *See id.*

Here, Count One charges a conspiracy to commit two substantive offenses: (1) "to transmit in interstate and foreign commerce, with intent to extort from a person, firm, association, and corporation, money and other things of value, a communication containing a threat to injure the property and reputation of the addressee and of another, including Victims 1-5," in violation of 18 U.S.C. § 875(d), and (2) "to receive, possess, conceal, and dispose of any money or other property that was obtained from the commission of any offense under this chapter that is punishable by imprisonment for more than one year, including [18 U.S.C. § 875(d)], knowing the same to be unlawfully obtained," in violation of 18 U.S.C. § 880.  Indict. ¶ 15.

Because neither statute contains any "clear affirmative indication that it applies extraterritorially," both are restricted to their domestic application.  *See RJR Nabisco*, 136 S. Ct. at 2101.  Properly restricting the conduct indictable under the statutes, the conspiracy to commit a § 880 offense must be dismissed in its entirety because the receipt, possession, concealment, or disposal of property charged all occurred overseas.  Similarly, those portions of the conspiracy to violate § 875(d) involving Victims 1 and 5 must be dismissed, because all relevant conduct with respect to those victims occurred extraterritorially.  *Only* those portions of the conspiracy to violate § 875(d) related to Victims 2-4 contain sufficient domestic conduct to survive the presumption against extraterritoriality.

**A.      The Object of the Conspiracy in Count One related to an Agreement to Violate § 880 Must be Dismissed in Its Entirety Because the Receipt of Funds At Issue Necessarily Occurred Overseas**

Because the receipt, possession, concealment, or disposal of any money or other property charged in the Indictment (which is the focus of 18 U.S.C. § 880) would have necessarily occurred overseas, that portion of the Indictment charging a conspiracy to violate § 880 must be dismissed.  18 U.S.C. § 880 provides that:

> A person who receives, possesses, conceals, or disposes of any money or other property which was obtained from the commission of any offense under this chapter that is punishable by imprisonment for more than 1 year, knowing the same to have been unlawfully obtained, shall be imprisoned not more than 3 years, fined under this title, or both.

18 U.S.C. § 880.  This statute does not give any "clear affirmative indication that it applies extraterritorially," and therefore, it does *not*.  *See RJR Nabisco*, 136 S. Ct. at 2101.

Indeed, even though the statute prohibits the receipt of "any" money or other property, the Supreme Court made it clear that this language is insufficient to provide a statute with extraterritorial reach.  *See id.* at 2108 ("The word 'any' ordinarily connotes breadth, but it is insufficient to displace the presumption against extraterritoriality.").  Likewise, even if some of the statutes to which § 880 refers proscribe activities affecting "interstate or foreign commerce," the Supreme Court has reiterated time and again that "even statutes … that expressly refer to '*foreign* commerce' do not apply abroad."  *Id.* at 2110 (emphasis in original); *see also Morrison*, 561 U.S. at 262-63 (same).  Accordingly, given § 880's silence with respect to any foreign application, it *cannot* apply extraterritorially, and it must be restricted to prohibiting domestic conduct.  *See RJR Nabisco*, 136 S. Ct. at 2101; *Morrison*, 561 U.S. at 262-63; *see also NewMarket Corp. v. Innospec, Inc.*, No. 3:10CV503-HEH, 2011 WL 1988073, at *4 (E.D. Va. May 20, 2011) (dismissing count for unlawful bribery under § 2(c) of the Robinson-Patman Act because that section "does not apply extraterritorially").

Turning then to the "focus" of § 880, it becomes clear that the conduct alleged in Count One of the Indictment represents an "impermissible extraterritorial application" of the statute.  *See RJR Nabisco*, 136 S. Ct. at 2101.  Section 880 focuses on those individuals who "receive[ ], possess[ ], conceal[ ], or dispose[ ] of" any money or other property improperly obtained under the statute.  18 U.S.C. § 880.  It is those acts of receipt, possession, concealment or disposal that

the statute actually prohibits, and therefore, those acts must occur within the United States in order to have a domestic application of the statute. *See Morrison*, 561 U.S. at 266-67 (holding that the focus of Section 10(b) was on the "purchase-and-sale transactions" of securities, rather than simply deceptive conduct, because it was "those transactions that the statute seeks to 'regulate'").[3]

Here, the Indictment alleges that *all* of the alleged co-conspirators were located abroad during the entirety of the scheme. *See* Indict. ¶¶ 4-5 (noting that Co-Conspirators 1 and 2 "were Syrian nationals located in Syria" and that Mr. Romar "was a Syrian national residing in Germany"). The Indictment further alleges that Mr. Romar, "who resided in Germany, would receive payments that Co-Conspirator 1 demanded from victims that could not be transmitted directly to the members of the Conspiracy located in Syria." Indict. ¶ 16(D). Because all of the co-conspirators were located outside of the United States throughout the lifetime of the scheme, any receipt, possession, concealment, or disposal of funds unlawfully obtained by them would have necessarily occurred abroad. Accordingly, because "the conduct relevant to the focus [of § 880] occurred in a foreign country … th[is] case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *See RJR Nabisco*,

---

[3] The fact that the focus of the statute is on where the money or property was received is further confirmed by the fact that the money or property at issue must have already been "unlawfully obtained" before a violation of § 880 may occur. *See* 18 U.S.C. § 880. Indeed, in the analogous situation of § 1957, which prohibits monetary transactions using proceeds "obtained" from a criminal offense, a violation may occur "only *after* the individual involved in the specified criminal activity gained possession or disposal of the proceeds generated by the criminal activity." *See United States v. Johnson*, 971 F.2d 562, 568 (10th Cir. 1992) (emphasis added). Thus, § 880 is concerned with the receipt, possession, concealment, or disposal of proceeds that have *already* been obtained from unlawful activity, and it is that after-the-fact conduct that is the focus of the statute.

136 S. Ct. at 2101.[4]   This means that the § 880 conspiracy charged in the Indictment is not

"indictable," and this object of the § 371 conspiracy must be dismissed.  *See id.* at 2102; *see also*

*United States v. Lopez-Vanegas*, 493 F.3d 1305, 1312-1313 (11th Cir. 2007) ("[T]here can be no

violation of § 846 if the object of the conspiracy is not a violation of the substantive offense.").

### B.    Those Portions of the Conspiracy to Violate § 875(d) Relating to Victims 1 and 5 Must Be Dismissed, Because All Relevant Conduct with Respect to Those Victims Occurred Extraterritorially

As those portions of Count One relating to Victims 1 and 5 refer only to extortionate

threats occurring entirely abroad, they do not charge any conduct indictable under 18 U.S.C. §

875(d), and they must be dismissed.  18 U.S.C. § 875(d) provides that:

> Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C. § 875(d).

As with 18 U.S.C. § 880, there is *no* express indication that Congress intended § 875(d)

to apply extraterritorially.  Moreover, while the statute does prohibit transmissions "in interstate

or foreign commerce," the Supreme Court has "emphatically rejected reliance on such language,

holding that 'even statutes … that expressly refer to '*foreign* commerce' do not apply abroad.'"

*See RJR Nabisco*, 136 S. Ct. at 2110 (emphasis in original); *Morrison*, 561 U.S. at 262-63

(same); *see also NewMarket*, 2011 WL 1988073, at *4 ("[T]he Supreme Court stressed that

'[t]he general reference to foreign commerce in the definition of 'interstate commerce' does not

---

[4] Because the focus of § 880 is on the receipt, possession, concealment, or disposal of the funds, it is irrelevant from where those funds were sent.  *See RJR Nabisco*, 136 S. Ct. at 2101. Therefore, even if those funds were sent from the United States, this does not change the "impermissible extraterritorial application" of the statute to the conduct charged.  *See id.*

defeat the presumption against extraterritoriality.'"").  Accordingly, because § 875(d) "gives no

clear indication of an extraterritorial application, it has none." *RJR Nabisco*, 136 S. Ct. at 2100.

Turning, then, to the focus of the statute, § 875(d) regulates those individuals who

"transmit[ ] in interstate or foreign commerce any communication containing any [prohibited]

threat."  18 U.S.C. § 875(d).  Thus, the focus of the statute is on the act of *transmitting* threats in

interstate commerce, and therefore, those transmissions must occur within the United States in

order to have a domestic application of the statute.  *See Morrison*, 561 U.S. at 266-67.

Transmissions occurring wholly abroad are not "indictable" and cannot be the basis of the

Indictment here.  *See RJR Nabisco*, 136 S. Ct. at 2102; *Lopez-Vanegas*, 493 F.3d at 1313

("[W]here, as here, the object of the conspiracy was to possess controlled substances outside the

United States with the intent to distribute outside the United States, there is no violation of §

841(a)(1) or § 846.").

Here, as discussed above, the Indictment alleges that *all* of the conspirators were located

in either Germany or Syria during the lifetime of the alleged scheme.  *See* Indict. ¶¶ 4-5, 16(D).

The Indictment further alleges that Victims 1 and 5 were located in Europe.  Indict. ¶ 8 (alleging

that Victim 1 was "a Europe-based web hosting company"); ¶ 12 (alleging that Victim 5 was "a

Switzerland-based web hosting company").  The Indictment is completely bereft of any

allegation that either of these victims had any operations of any kind in the United States.  *See*

Indict., *generally*.  Thus, because both the conspirators (who purportedly sent the alleged threats)

and the victims (who received them), were both located outside of the United States, the

applicable transmissions contemplated by the charged conspiracy necessarily would have

occurred entirely outside the United States.  As a result, the conduct charged with respect to

Victims 1 and 5 in Count One represents an "impermissible extraterritorial application" of §

875(d), which requires those portions of the Indictment related to them to be dismissed.  *See RJR Nabisco*, 136 S. Ct. at 2102; *Lopez-Vanegas*, 493 F.3d at 1313 ("Because the Court holds that 21 U.S.C. §§ 841 and 846 do not apply extraterritorially, the conduct of Lopez and Salazar does not violate those statutes.  The judgments of conviction and sentences … are VACATED.").[5]

### III.    Those Portions of Count Two Related to Victims 1 and 5 Must Be Dismissed Because They Do Not Involve Any "Protected Computers" Under 18 U.S.C. § 1030

In order to allege a conspiracy to commit unauthorized computer intrusions in violation of 18 U.S.C. § 1030(b), "the government must show that [the conspirators] accessed or attempted to access a 'protected computer.'"  *United States v. Wadford*, 331 F. App'x 198, 202 (4th Cir. 2009).  According to the statute, "the term 'protected computer' means a computer … which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States."  18 U.S.C. § 1030(e)(2)(B).  This definition, however, does not include wholly foreign computers that have no connection to the United States.  *See Wadford*, 331 F. App'x at 203 (recognizing "that Congress has defined the phrase 'foreign communication' as a 'communication or transmission from or to any place in the United States to or from a foreign country.'") (quoting *Cable & Wireless P.L.C. v. FCC*, 166 F.3d 1224, 1231 (D.C. Cir. 1999)).

Here, Victims 1 and 5 were both located entirely outside of the United States.  *See* Indict. ¶ 8 (noting that Victim 1 "was a Europe-based web hosting company"); ¶ 12 (noting that Victim 5 "was a Switzerland-based web hosting company").  The Indictment does not allege that either

---

[5] In fact, the Indictment does not allege any conduct of any kind, *at all*, occurring in the United States with respect to any scheme to defraud Victims 1 and 5.  *See* Indictment, *generally*.  In such a situation, because § 875(d) does *not* apply extraterritorially and because "'all the relevant conduct' regarding those violations 'took place outside the United States,'" the Court must dismiss this portion of the Indictment regardless of § 875(d)'s focus.  *See RJR Nabisco*, 136 S. Ct. at 2101.

Victim possessed a computer or server either in the United States or affecting interstate or

foreign commerce within the United States.  *See* Indict., *generally*.  Given that all of the alleged

conspirators also resided outside of the United States and interacted with the computers at issue

only from abroad, *see* Indict. ¶¶ 4-5, any computers related to Victims 1 and 5 cannot be

considered "protected computers" under the statute.  *C.f. Wadford*, 331 F. App'x at 202-03

(holding that computers qualified as "protected computers" where "the company's computers

were used by employees in South Carolina to communicate with employees in Italy and that

employees in Italy used the computers to access electronic data stored in South Carolina").

Thus, schemes to commit unauthorized computer intrusions of Victims 1 and 5 cannot be objects

of the charged conspiracy, and any portions of Count Two based on them must be dismissed.

## IV.   Count Three Must Be Dismissed In Its Entirety Because The Conduct Alleged Falls Outside of the Limited Extraterritorial Application Permitted by Congress

18 U.S.C. § 1956(f) provides that:

> There is extraterritorial jurisdiction over the conduct prohibited by this section if—(1) the conduct is by a United States citizen, or, in the case of a non-United States citizen, the conduct occurs in part in the United States; *and* (2) the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.

18 U.S.C. 1956(f) (emphasis added).  Section 1956(f)'s provisions apply to each substantive

section of the money laundering statute.  *See United States v. Chi Tong Kuok*, 671 F.3d 931, 940

(9th Cir. 2012).[6]  Thus, if an Indictment fails to satisfy *either* prong of the test, it does not allege

---

[6] In *Chi Tong Kuok*, the government argued that § 1956(f) was "only invoked when the case involves *purely* extraterritorial conduct."  *See Chi Tong Kuok*, 671 F.3d at 940 (emphasis in original).  Thus, the government argued, because its case involved conduct occurring in part in the United States, it did "not invoke extraterritorial jurisdiction at all."  *See id.*  The court *rejected* this argument, holding that "[i]f the government were correct that subsection (f) can only be invoked in cases that involve conduct taking place *entirely* outside of the United States, the second part of subsection (f)(1) would be meaningless, and proscribe no possible set of conduct."  *Id.* (emphasis in original).  As such, the court vacated the defendant's conviction because the government failed to show that the transactions at issue exceeded $10,000.  *See id.*

indictable conduct under § 1956. *See RJR Nabisco*, 136 S. Ct. at 2102; *Morrison*, 561 U.S. at 265 ("[W]hen a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms.").

Here, Count Three of the Indictment alleges a money laundering scheme by conspirators residing in Germany and Syria. Indict. ¶¶ 4-5. Thus, the extraterritorial provisions of § 1956(f) must be met in order to state an offense. *See Chi Tong Kuok*, 671 F.3d at 940.

Yet the allegations contained in Count Three fail to satisfy either prong of 1956(f). First, based on the Indictment's explicit allegations, Count Three does not allege transactions sufficient to reach the $10,000 threshold. Second, the Indictment does not allege "conduct occur[ing] in part in the United States" because all of the contemplated financial transactions capable of supporting a charge of money laundering were to take place abroad. Either of these deficiencies, on its own, requires the dismissal of Count Three in its entirety.

## A.     The Indictment Does Not Allege a Series of Related Transactions Involving Funds Exceeding $10,000

"Each count of an indictment must stand on its own." *United States v. Smith*, 44 F.3d 1259, 1265 (4th Cir. 1995). "[I]f one count incorporates paragraphs from other counts, the incorporated paragraphs too may be considered in determining whether a count properly charges an offense." *Id.* But if a count does not incorporate other paragraphs from the indictment, then those paragraphs "should not be considered part of any money laundering count when reviewing its adequacy." *Id.*

Here, Count Three of the Indictment references two monetary transactions made as part of the money laundering conspiracy: (1) "a Western Union payment from Victim 2 of approximately €1039.13, before fees and taxes," and (2) "three payments from Victim 5 totaling €5,000." Indict. ¶¶ 22(B)-(C). These transactions total €6,039.13, well below the $10,000

minimum threshold for extraterritorial jurisdiction. *See* 18 U.S.C. § 1956(f); *Chi Tong Kuok*, 671 F.3d at 940.

Nor is this deficiency cured by reference to the preceding paragraphs incorporated in Count Three. Count Three only incorporates the general allegations contained in Paragraphs 1-13 and the allegations contained in Paragraph 16. *See* Indict. ¶¶ 20, 22(A). None of these paragraphs make reference to any financial transactions at all, let alone related transactions sufficient to raise the total monetary value at issue over $10,000. *See* Indict. ¶¶ 1-13, 16.[7]

Moreover, it is irrelevant that the Indictment alleges that the conspirators "demanded more than $500,000" from their victims, because Section 1956(f) encapsulates only actually completed financial transactions, not those merely contemplated by the conspirators. *See* 18 U.S.C. § 1956(f); *see also* Indict. ¶ 7 (noting only that the conspirators "accepted smaller amounts in many circumstances"). While it is true that a conspiracy under Section 1956(h) ordinarily does not require any overt acts to state an offense, Section 1956(f), by its plain and unambiguous terms, serves to limit this general proposition in cases involving extraterritorial conduct. *See RJR Nabisco*, 136 S. Ct. at 2101 ("The scope of an extraterritorial statute … turns on the limits Congress has (or has not) imposed on the statute's foreign application.").

---

[7] Even if the Court were to review the allegations contained in other Counts of the Indictment (which it should not), *see Smith*, 44 F.3d at 1265 ("The money laundering counts do not incorporate the wire fraud counts. Consequently, the wire fraud counts should not be considered part of any money laundering count when reviewing its adequacy."), this would *not* change the result. As described above, Victims 1 and 5 are European companies that are not alleged to have any relation to the United States or to have transferred any funds from the United States. *See* Indict. ¶¶ 8, 12. Thus, any allegations of a money laundering scheme with respect to Victims 1 and 5 must be dismissed because no part of that conduct took place in the United States. *See* 18 U.S.C. § 1956(f); *RJR Nabisco*, 136 S. Ct. at 2101 (holding that dismissal is proper where "'all the relevant conduct' regarding those violations 'took place outside the United States'"); *Lopez-Vanegas*, 493 F.3d at 1312-13 ("[W]here, as here, the object of the conspiracy was to possess controlled substances outside the United States with the intent to distribute outside the United States, there is no violation of § 841(a)(1) or § 846.").

While Congress might have chosen to create a separate extraterritorial limitation for conspiracies under the money laundering statute, it did *not*, and therefore, the Indictment here must allege a series of related transactions involving funds exceeding $10,000.  *See id.* at 2102 ("when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms").[8]  Because the Indictment does *not* allege such a series of transactions, it does not allege "indictable" conduct, and Count Three must be dismissed.  *See id.*

**B.      The Indictment Does Not Allege Conduct Occurring in Part in the United States because All of the Prohibited Transactions Would Have Been Initiated and Completed Abroad**

18 U.S.C. § 1956(f) provides for "extraterritorial jurisdiction over the conduct prohibited by this section if … in the case of a non-United States citizen, the conduct occurs in part in the United States."[9]  Because the only indictable conduct alleged by the Indictment occurred overseas, Count Three must be dismissed for failure to satisfy § 1956(f).

"Federal law defines money laundering as 'a monetary transaction in criminally derived property that is … derived from specified unlawful activity.'"  *United States v. Butler*, 211 F.3d 826, 829 (4th Cir. 2000).  "Congress did not fashion the money laundering statute to create a new

---

[8] Because "[t]he question is not whether we think 'Congress would have wanted' a statute to apply to foreign conduct 'if it had thought of the situation before the court,' but whether Congress has *affirmatively and unmistakably* instructed that the statute will do so," it is unnecessary to delve into what Congress might have done, had it confronted this question.  *See RJR Nabisco*, 136 S. Ct. at 2100 (emphasis added).  Nevertheless, it makes perfect sense for Congress to have decided, in crafting Section 1956(f), to limit the extraterritorial reach of the statute to only those money laundering conspiracies that resulted in over $10,000 in transactions.  Congress very likely decided that it was unnecessary to risk "unintended clashes" with other nations, where a conspiracy achieved such minimal results.  *See Kiobel*, 133 S. Ct. at 1664 (noting that the presumption against extraterritoriality "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord").
[9] Because all of the alleged conspirators are foreign citizens, *see* Indict. ¶¶ 4-5, none of the conduct at issue was "by a United States citizen."  *See* 18 U.S.C. § 1956(f).  Thus, the first part of § 1956(f)(1) cannot be used to confer "extraterritorial jurisdiction."

source of criminal liability for every fraudulent monetary transaction." *Id.* Rather, "Congress targeted only those transactions occurring *after* proceeds have been obtained from the underlying unlawful activity." *Id.* (citing *United States v. Johnson*, 971 F.2d 562, 569 (10th Cir. 1992)) (emphasis added).

Indeed, "Congress aimed the crime of money laundering at conduct that follows in time the underlying crime, rather than to afford an alternate means of punishing the prior 'specified unlawful activity.'" *Johnson*, 971 F.3d at 569. Thus, while the *existence* of "specified unlawful activity," is a necessary element of money laundering, this initial generation of criminally derived proceeds is not *conduct* prohibited by the money laundering statute. *See United States v. Villarini*, 238 F.3d 530, 535 (4th Cir. 2001). To the contrary, the "'existence of criminally generated proceeds' [is] only a 'circumstance' element of money laundering in that it [is] established by proof of a crime that *preceded* the money laundering conduct." *Id.* (emphasis added); *see also Butler*, 211 F.3d at 830 ("Put plainly, the laundering of funds cannot occur in the same transaction through which those funds first became tainted by crime."). Accordingly, Section 1956(f)'s reference to "conduct prohibited by this section" refers to the financial transaction that is prohibited by the money laundering statute, _not_ to the generation of criminal proceeds that preceded it. *See id.*; *see also United States v. Bodmer*, 342 F. Supp. 2d 176, 191 (S.D.N.Y. 2004) ("The elements of a money laundering offense do not include, or even implicate, the capacity to commit the underlying unlawful activity.").

Here, none of the "conduct prohibited by [the money laundering] section" charged in Count Three took place in part in the United States. Notably, the Indictment alleges that all of the purported conspirators were foreign nationals who never entered or took any actions of any kind in the United States. *See* Indict. ¶¶ 4-5. Thus, as an initial matter, to the extent any

conspiracy to commit money laundering was formed, it was formed overseas.  *See, e.g.*, *United States v. Clenney*, 434 F.3d 780, 782 (5th Cir. 2005) (noting that "the intent element [of an offense] is a mental state that cannot have been 'committed' anywhere but where [the defendant] was physically present").

Moreover, any money laundering "conduct" alleged by the Indictment took place entirely overseas because that is where all of the alleged conspirators both initiated and completed any financial transactions that took place *after* the initial proceeds of the underlying extortion scheme were received.  *See* Indict. ¶ 16(D) (noting that Mr. Romar, in Germany, would receive payments from *victims* and then send those payments from Germany to Syria).  Indeed, the money laundering scheme at issue here is not based on any transactions that were initiated in the United States.  Rather, it is based on Mr. Romar's alleged transfers of criminally derived proceeds from Germany to Syria.  *See id.*  This wholly extraterritorial conduct cannot serve to state an offense under § 1956(f).  *See United States v. Stein*, No. 93-375, 1994 WL 285020, at *5 (E.D. La. June 23, 1994) (Clement, J.) ("[S]ection 1956 was not intended, nor does it, apply to actions of a non-United States citizen taken wholly outside the United States.") (citing S. Rep. 99-433 at 14).[10]

While the Indictment does allege a single transaction from Victim 2 in the United States to Mr. Romar in Germany, that transaction was allegedly done in order to pay the conspirators as part of their underlying extortion scheme, *not* as part of any after-the-fact scheme to launder the

---

[10] In *Stein*, the court found that the Indictment at issue did not allege "conduct wholly outside this country" because the financial transactions that were the basis for the money laundering charge were initiated in New Orleans and completed in London.  *See Stein*, 1994 WL 285020, at *5.  Thus, "[a]lthough the defendant was physically in the United Kingdom throughout the transaction, he acted, albeit electronically or otherwise, within the borders of the United States."  *Id.*  Here, by contrast, any financial transactions that could form the basis of a money laundering charge were initiated in Germany and completed in Syria.  They occurred completely outside of the United States, and therefore, are *insufficient* to exercise extraterritorial jurisdiction under Section 1956(f).

proceeds received. *See* Indict. ¶¶ 9, 22(B). These payments from a *victim* of the underlying extortion scheme to the alleged conspirators merely consummated the underlying criminal conduct that resulted in the existence of criminally derived proceeds. Only *after* this initial payment did any proceeds exist to be laundered. *See Butler*, 211 F.3d at 829 ("Funds are 'criminally derived' if they are 'derived from an already completed offense, or a completed phase of an ongoing offense.'").

At the time of the financial transaction between Victim 2 and Mr. Romar, no "conduct" had taken place that could be indicted as money laundering, because that transaction merely completed the underlying criminal offense. In order to constitute money laundering, a second transaction using those proceeds was required. *See Butler*, 211 F.3d at 830; *Johnson*, 971 F.2d at 569-70 ("The underlying criminal activity in this case was wire fraud, which the defendant accomplished by causing the investors to wire funds to his account. … The defendant did not have possession of the funds nor were they at his disposal until after the investors transferred them to him. … Thus, the transfers alleged in counts four through thirty-one of the indictment were not transactions in criminally derived property and the defendant's convictions on those counts are reversed."); *United States v. Christo*, 129 F.3d 578, 580 (11th Cir. 1997) ("[W]e conclude that these facts are insufficient to establish that Maulden engaged in a monetary transaction that was separate from and in addition to the underlying criminal activity.").[11] Thus, this initial transaction between Victim 2 and Mr. Romar served only as "proof of a crime that *preceded* the money laundering conduct," *not* as any "conduct prohibited by" the money laundering statute. *See Villarini*, 238 F.3d at 535 (emphasis added). While the conspirators may have then engaged in conduct prohibited by the money laundering statute, all such conduct

---

[11] Both *Johnson* and *Christo* were cited with approval by the Fourth Circuit in *Butler*. *See Butler*, 211 F.3d at 829.

occurred *outside* of the United States, and therefore exceeds the scope of § 1956(f). *See Stein*, 1994 WL 285020, at *5.[12]

In short, the only conduct alleged by the Indictment that occurred even in part in the United States was the underlying payments from extortion victims to the conspirators. Because these payments merely completed the underlying criminal offenses that preceded any money laundering conduct, they are insufficient to give rise to extraterritorial jurisdiction under Section 1956(f). The payments might matter for determining the extraterritoriality of the underlying offenses, but they are not part of any "conduct prohibited by [the money laundering] section." *See* 18 U.S.C. § 1956(f); *see also Villarini*, 238 F.3d at 535 ("Even assuming, however, that the indictment may be read as implicitly alleging that Villarini transported the money from Virginia to Florida, it certainly contains no allegation that such transportation was part of a scheme to launder the money."). Because the only alleged "conduct prohibited by [the money laundering] section" occurred overseas, Count Three of the Indictment must be dismissed in its entirety.

## CONCLUSION

For the reasons stated herein, Mr. Romar respectfully requests that the Court dismiss (1) the 18 U.S.C. § 880 object of the conspiracy in Count One; (2) those portions of the § 875(d) conspiracy in Count One related to Victims 1 and 5; (3) those portions of Count Two related to Victims 1 and 5; and (4) Count Three in its entirety for failure to state an offense.

---

[12] At a bare minimum, any portions of Count Three related to Victims 1, 3, 4, and 5 must be dismissed. Victims 1 and 5 were located in Europe, *see* Indict. ¶¶ 8, 12, and therefore, there can be no dispute that all conduct related to the laundering of the proceeds of their extortion occurred "wholly outside the United States." *See Stein*, 1994 WL 285020, at *5. With respect to Victims 3-4, there are no allegations that these Victims paid any money to the conspirators at all. *See* Indict. ¶¶ 16, 22. Given that fact, there can be no "conduct" occurring as to them that is prohibited by the money laundering statute. *See* 18 U.S.C. § 1956(f).

Dated: July 18, 2016

Respectfully submitted,

PETER ROMAR
By Counsel

_____-s-_____
Geremy C. Kamens

Geremy C. Kamens, Esq.
Federal Public Defender
Counsel for Peter Romar
Virginia Bar Number 41596
1650 King Street, Suite 500
Alexandria, Virginia  22314
(703) 600-0848 (T)
(703) 600-0880 (F)
Geremy_Kamens@fd.org (e-mail)

AND

Rory E. Adams, Esq.
Virginia Bar Number 76452
Manatt, Phelps, & Phillips LLP
1050 Connecticut Ave., NW, Suite 600
Washington, DC 20036
(202) 585-6614 (T)
(202) 585-6600 (F)
radams@manatt.com (e-mail)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 18, 2016, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Maya D. Song
Brandon L. Van Grack
Assistant U.S. Attorneys
Eastern District of Virginia
2100 Jamieson Ave
Alexandria, VA 22314
(703) 299-3700
maya.song@usdoj.gov
brandon.van.grack2@usdoj.gov


                               _____-s-_____
                               Geremy C. Kamens, Esq.
                               Federal Public Defender
                               Virginia Bar Number 41596
                               1650 King Street, Suite 500
                               Alexandria, Virginia  22314
                               (703) 600-0848 (T)
                               (703) 600-0880 (F)
                               Geremy_Kamens@fd.org (e-mail)