IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PETER ROMAR,<br>(a/k/a "PIERRE ROMAR"),<br><br>Defendant. | Criminal No. 1:16-cr-140<br><br>The Hon. Claude M. Hilton<br><br>Hearing Date: Sept. 30, 2016 |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND THREE OF THE INDICTMENT FOR IMROPER VENUE

Beginning in early 2013, the defendant, PETER ROMAR, conspired with persons located in Syria to commit unlawful activities in the United States and overseas. The defendant, located in Germany, and his Syrian-based co-conspirators gained unauthorized access to the computer networks of at least 14 victims in the United States and overseas, extorted and attempted to extort over $500,000 from those victims, and laundered extorted money from some of those victims. One of those victims was a United States online media company with a server in the Eastern District of Virginia that the conspirators damaged and stole from. The defendant was indicted for three intertwined conspiracies: conspiracy to transmit extortionist communications and receive extorted money (Count One), conspiracy to commit unauthorized computer intrusions (Count Two), and conspiracy to launder money (Count Three). On May 9, 2016, United States Marshals transported the defendant from Germany to the Eastern District Virginia to face those charges.

The defendant now moves to dismiss Counts One and Three of the Indictment for improper venue because "no conduct essential to the elements" of those counts took place in the Eastern District of Virginia. *See* Defendant's Motion to Dismiss for Improper Venue (ECF

No.25) ("Def. Mot.") at 1. The defendant, however, misapplies the "conduct essential to the elements" standard, ignores the essential conduct that occurred in this District, and overlooks controlling statutes and case law. The defendant's motion is virtually silent on an explicit basis for venue in this case, 18 U.S.C. § 3238, which states that any offense "begun or committed" outside of the United States, "shall be in the district in which the offender . . . is first brought." The conspiracy undeniably began overseas *and* critical acts of the conspiracy were committed overseas, and the defendant was brought from Germany to the Eastern District of Virginia to face charges in this case. Even assuming *arguendo* that Section 3238 does not apply, which would be contrary to the plain language of that statute, there is also venue for both counts because overt acts in furtherance of the conspiracies occurred in the Eastern District of Virginia. Under long-standing case law, venue for a conspiracy rests in any district where an overt act in furtherance of the conspiracy occurred. Accordingly, under either basis, the Court should deny the defendant's motion.

## FACTUAL BACKGROUND

The defendant participated in a wide-ranging conspiracy that targeted, stole information from, and extorted money from victims in the United States and overseas. Beginning in 2013, the defendant sought to work with members of a Syrian-based hacking group, the Syrian Electronic Army ("SEA"). *See* Indictment (ECF No.17) ("Indict.") at ¶¶ 1-6. Although the defendant was a Syrian national, at the time he resided in Germany. *Id.* The defendant subsequently began working with members of the SEA, including an SEA member known as "The Shadow" who was located in Syria. Around July 2013, the conspirators began gaining unauthorized access to computer networks of private companies and extorting those companies for money. *Id.* at ¶¶ 7,

16. The conspiracy targeted at least 14 companies in the United States and overseas, and demanded more than $500,000.

The conspiracy would first obtain unauthorized access to a company's computer network be sending spearphishing emails. Once they obtained computer network access, the conspirators would exfiltrate information and databases, redirect internet traffic on the network, and deface company websites, among other actions. After obtaining network access and engaging in these unauthorized activities, the conspirators would send threatening emails to the company, demanding money in exchange for not further damaging the network or selling stolen information. Companies who responded to the threats were directed to send money to the defendant in Germany since the companies often could not send the money directly to Syria due to sanctions against Syria. Upon receipt of the money in Germany, the defendant would devise schemes to avoid the Syrian sanctions and to send money to his co-conspirators in Syria. *Id.* at ¶¶ 16, 17(X).

One of the conspiracy's United States victims used and controlled a server located in Ashburn, Virginia, which is located in the Eastern District of Virginia ("Ashburn server"). *Id.* at ¶ 10. Much of the conduct directed against that company occurred on that server. As described in the Indictment, the conspiracy sent spearphishing emails to that company's employees to gain unauthorized access to its servers and databases. With information obtained from employee responses to those emails, the conspiracy gained unauthorized access to the Ashburn server, damaged the server, and stole information and databases from the server. *Id.* at ¶ 17(Y)-(Z). One of the co-conspirators later emailed the company, demanding €20,000 in exchange for stopping "the hack." *Id.* When the company explained it could not send money from the United States to Syria, one of the conspirators asked the company to send it to "a person in Germany" (i.e., the

defendant). *Id.* at ¶ 17(AA). Ultimately, the company refused to pay the conspirators, which precipitated threats to "hack and destroy the company." *Id.* at ¶ 17(BB). Days later, the conspirators used email lists it had stolen from the Ashburn server to send spam emails to the company's customers, and offered to sell databases it had stolen from the server. *Id.* at ¶ 17(CC).

On September 29, 2015, the defendant and "The Shadow" were charged by criminal complaint for the above conduct in the Eastern District of Virginia. On March 15, 2016, German authorities provisionally arrested the defendant at the request of the United States. German authorities subsequently agreed to extradite the defendant to the United States. On May 9, 2016, United States Marshals obtained custody of the defendant in Germany and took a direct flight from Germany to Dulles International Airport, which is located in the Eastern District of Virginia. *See* Indict. at ¶ 13. On June 8, 2016, a grand jury returned a three-count Indictment against the defendant, charging him with: conspiring to commit offenses against the United States, specifically transmitting extortionist communications and receiving money from extortionist communications, all in violation of 18 U.S.C. § 371 (Count One); conspiring to commit computer intrusions, in violation of 18 U.S.C. § 1030(b) (Count Two); and conspiring to launder money, in violation of 18 U.S.C. § 1956(h) (Count Three).

## ARGUMENT

The conspiracy's damage of and theft from the Ashburn server and the defendant's arrival at Dulles to face charges in this case each provide a basis for establishing venue in the Eastern District of Virginia for Counts One and Three.

I.  **Venue Can Be Established in This Case Under 18 U.S.C. § 3238 or if Overt Acts in Furtherance of the Conspiracies Were Committed in the Eastern District of Virginia**

There is venue in the Eastern District of Virginia for both counts at issue, under multiple venue provisions. Congress has set venue both by appending specific venue provisions to statutes creating substantive crimes and by enacting generic venue-laying statutes, such as 18 U.S.C. §§ 3237 and 3238. *See* Fed.R.Crim.P. 18 Advisory Committee's Note to 1944 Adoption (cataloguing venue provisions). Here, there are both specific and generic venue statutes that apply.

In cases where part of the offense occurred overseas, Congress has established venue under 18 U.S.C. § 3238.[1] Section 3238 provides that venue for an offense "begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought . . . ." (Emphasis added.) Since part of the criminal conduct here was committed overseas, Section 3238 serves as the starting point for determining venue for Counts One and Three. As the Indictment conveys, the government relied in part on Section 3238 to establish venue in this case. *See* Indict. at ¶ 13 ("On or about May 9, 2016, pursuant Title 18, United States Code, Section 3238, ROMAR was first brought to the Eastern District of Virginia.").

While venue in this case can be established under Section 3238, venue is also proper in this District under other venue provisions. For conspiracies, "the Supreme Court has long held that venue is proper in any district in which a conspirator performs an overt act in furtherance of the conspiracy." *United States v. Mitchell*, 70 F. App'x 707, 711 (4th Cir. 2003); *United States v. Al Talib*, 55 F.3d 923, 928 (4th Cir. 1995) (same); *Hyde v. United States*, 225 U.S. 347, 356-67

---

[1] The history of a statute establishing extraterritorial venue dates back to the first Congress. *See Cook v. United States*, 138 U.S. 157, 182 (1891); Justice Story, 2 Story, Const. § 1781.

5

(1912) (same); *United Sates v. Anderson*, 611 F.2d 504, 509 n.5 (4th Cir. 1979) (same); *United States v. Bowens*, 224 F.3d 302, 311 n.4 (4th Cir. 2000) (same). The "overt act or acts necessary to support venue in a conspiracy case do not have to be substantial." *Mitchell*, 70 F. App'x at 711; *see also Al Talib*, 55 F.3d 923 at 928 (listing cases in which "insubstantial acts have served to established venue" in conspiracy cases). This venue rule for conspiracies is reflected in specific and generic statutory venue provisions that apply to Counts One and Three. For Count Three, conspiracy to commit money laundering (18 U.S.C. § 1956), Congress provided a specific venue provision, 18 U.S.C. § 1956(i)(2), which states in pertinent part, "A prosecution for an attempt or conspiracy offense under this section . . . may be brought in the district . . . <u>where an act in furtherance of the attempt or conspiracy took place</u>." (Emphasis added.) While Count One, conspiracy to commit offenses against the United States (18 U.S.C. § 371), does not have a specific venue-laying provision, Congress provided that for crimes committed in more than one district, venue "may" be established "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237. As applied to conspiracies, courts, including the Fourth Circuit, have interpreted Section 3237 to mean "a prosecution may be brought in any district in which any act in furtherance of the conspiracy was committed." *Al-Talib*, 55 F.3d at 928.

Accordingly, to determine whether there is venue for in this District Counts One and Three, two independent standards apply. These standards are not mutually exclusive; the determination of venue under one standard does not negate the determination of the other. The Constitution does not "'command a single exclusive venue.'" *United States v. Goldberg*, 830 F.2d 459, 466 (3rd Cir. 1987) (quoting *United States v. Reed*, 773 F.2d 477, 480 (2d Cir. 1985)). The Court need only find that there is venue in the Eastern District of Virginia under one of these standards.

## II. Venue Is Proper Under 18 U.S.C. § 3238 Because the Conspiracies Began Overseas, Parts of the Conspiracies Were Committed Overseas, and the Defendant was First Brought to the Eastern District of Virginia

There is venue in the Eastern District of Virginia for each count in this case since the conspiracies began overseas, parts of the conspiracies were committed overseas, and the defendant was brought from overseas to this District to face these charges. For offenses begun or committed outside of the United States, 18 U.S.C. § 3238 dictates the proper venue. Section 3238 provides that venue for an offense "begun or committed . . . out of the jurisdiction of any particular State or district, shall be in the district in which the offender . . . is first brought." There are two prongs under Section 3238 to establish venue: (i) the offense began or was committed outside the United States, and (ii) the defendant was first brought to the district where the government has asserted venue.

Courts have widely held that the phrase "begun or committed" means precisely what it says – Section 3238 establishes venue as long as an offense began outside the territorial jurisdiction of the United States <u>or</u> occurred wholly or partially outside the territorial jurisdiction of the United States. *See, e.g., United States v. Pendleton*, 658 F.3d 299, 304 (3d Cir. 2011) (Section 3238 applies "even when some of a defendant's conduct takes place in the United States"); *United States v. Miller*, 808 F.3d 607, 618-22 (2d Cir. 2015) (holding that "[s]ection 3238 may apply even when certain offense conduct occurs in the United States, if the criminal acts are nonetheless 'essentially foreign'"); *United States v. Bin Laden*, 146 F. Supp. 2d 373, 381 (S.D.N.Y. 2001) (finding venue appropriate under § 3238 "irrespective of the fact that a few of the alleged overt acts . . . were later committed inside the United States").

For the "first brought" prong, courts have held that the term means a person brought to a district from outside the United States in custody. *See, e.g., United States v. Erdos*, 474 F.2d 157,

160 (4th Cir. 1973) ("first brought" refers to "restraint"); *United States v. Catino*, 735 F.2d 718, 724 (2d Cir. 1984) ("'[F]irst brought' . . . applies only in situations where the offender is returned to the United States in custody.").

The facts in this case satisfy both prongs of Section 3238. Each member of the conspiracies was located overseas. The defendant was in Germany during the relevant period, while his co-conspirators identified in the Indictment resided in Syria. There is no evidence that the defendant or his co-conspirators had ever been to the United States. Those facts alone establish that the conspiracies began – either the agreements to commit unlawful acts or the unlawful acts themselves – outside the territorial jurisdiction of the United States. The defendant's motion concedes as much. *See, e.g.,* Def. Mot. at 7. Similarly, there is no dispute that some of the criminal acts in this case were committed outside of the United States. For example, the conspiracies were formed overseas, the conspirators gained unauthorized access to computers by sending spearphishing emails from overseas, the conspirators sent extortion threats from overseas, and the conspirators received extorted money overseas. As for the second prong, after the German government approved the defendant's extradition, United States Marshals took custody of the defendant and boarded a direct flight from Germany to Dulles. *See* Indict. at ¶ 13. Venue in this case is thus clear since the conspiracies began outside of the United States, parts of the conspiracies were committed outside of the United States, and the defendant first arrived in the Eastern District of Virginia in custody to face charges in this case.

Despite the fact that Section 3238 conclusively establishes venue in this District for Counts One and Three, the defendant makes only a passing reference to the statute in a footnote and the third-to-last paragraph of his motion. *See* Def. Mot. at 5 n.2, 11. These two glancing mentions selectively quote the statute and fail to acknowledge that venue can be established

under Section 3238 if the offense had simply "begun" outside of the United States.[2] Instead of relying on the plain language of the statute or its two prongs, the defendant devises a third prong: that Section 3238 only applies if every "essential conduct element" of the offense was committed overseas. *See id*. With little explanation and miscitation to a single relevant case, the defendant asks the Court to hold that under Section 3238 venue can only be established when the offense was <u>entirely</u> "committed" outside of the United States, which would require both striking the word "begun" from the statute and adding an adverb. Such an interpretation cannot possibly be correct, because crimes entirely committed outside of the United States would have also "begun" outside of the United States. For the term "begun" to have independent meaning, the statute must establish venue for crimes where some of the conduct was committed inside the United States. When interpreting a statute, "courts should endeavor to give meaning to every word which Congress used and therefore should avoid an interpretation which renders an element of the language superfluous." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2011). For this reason, no court has adopted the defendant's proposal to render superfluous the word "begun" from Section 3238. *See, e.g., United States v. Torres-Garcia*, No. 05-267, 2007 WL 1207204, at *6-7 (D.D.C. Apr. 24, 2007) (declining to adopt defendant's request to "read the word 'begun' out of the statute"); *Miller*, 808 F.3d at 618-22 (Section 3238's application "is not restricted to offenses *wholly* committed outside the jurisdiction of the United States."); *Pendleton*, 658 F.3d at 304-05 (Section 3238 applies "even when some of a defendant's conduct takes place in the United States.").

The only case the defendant cites in support of his position that every essential conduct element must have been committed overseas in order to establish venue under Section 3238,

---

[2] The defendant's motion fails to mention the word "begun" in its discussion of Section 3238. *See* Def. Mot. at 5 n.2, 11.

*United States v. Levy Auto Parts of Canada*, 787 F.2d 946, 952 (4th Cir. 1986), does not adopt such a holding. Rather, the Fourth Circuit in *Levy Auto Parts of Canada* held that venue was proper under Section 3238 in the Eastern District of Virginia for a foreign conspiracy that began overseas and had minimal contacts in the United States. *Id.* The defendant crafts his position not from this holding, but from the court's reflection that it "would *perhaps* have had a different case," if the conspiracy's contacts within the United States had been substantial. *Id.* (emphasis added). This statement is, at best, equivocal.[3] The court also explicitly limited its decision to the facts before it, noting that "[t]his is not a case for a broad holding." *Id*.

Accordingly, under Section 3238, there is venue in the Eastern District of Virginia for Counts One and Three. The Court's venue inquiry need not go any further.

## III. Overt Acts in Furtherance of the Conspiracies Occurred in the Eastern District of Virginia

Venue is also proper in the Eastern District of Virginia for Counts One and Three because the defendant and his co-conspirators committed overt acts in furtherance of the conspiracies in this District. For a conspiracy, "a prosecution may be brought in any district in which any act in furtherance of the conspiracy was committed." *Al Talib*, 55 F.3d at 928; 70 F. App'x at 711 (same); *Hyde*, 225 U.S. at 356-67 (same); *United States v. Green*, 599 F.3d 360, 371 (4th Cir. 2010) (same); *United States v. Persaud*, 87 F. App'x 869, 872 (4th Cir. 2004) (same); *United States v. Day*, 700 F.3d 713, 727 (4th Cir. 2012) (same). The "overt act or acts

---

[3] In reaching this equivocal, non-binding remark, the court widely quoted from dicta in a Second Circuit decision, *United States v. Gilboe*, 684 F.2d 235, 239 (2d Cir. 1982), that the Second Circuit has since rejected. *See Miller*, 808 F.3d at 621 (asserting that "dicta in *Gilboe*" is not controlling); *see also Bin Laden*, 146 F. Supp. 2d at 381 (finding venue appropriate under § 3238 "irrespective of the fact that a few of the alleged overt acts of the conspiracy were later committed inside the United States"). Numerous other courts have likewise rejected the defendant's position. *See, e.g., Pendleton*, 658 F.3d at 304-05 (Section 3238 applies "even when some of a defendant's conduct takes place in the United States."); *United States v. Erwin*, 602 F.2d 1183, 1185 (5th Cir. 1979) (same); *Torres-Garcia*, 2007 WL 1207204, at *6-7 (same).

10

necessary to support venue in a conspiracy case do not have to be substantial." *Mitchell*, 70 F. App'x at 711; *see also Day*, 700 F.3d at 727 (holding that "simple acts" can give rise to venue in a conspiracy). As described *supra*, the defendant and his co-conspirators engaged in a spearphishing attack of a United States company that used and controlled a server in the Eastern District of Virginia. The conspirators gained unauthorized access to that server, took information from the server, and damaged the server. These actions, all of which occurred in the Eastern District of Virginia, constitute overt acts for Count One (conspiracy to transmit extortionist communications and receive money from extortionist communications) and Count Three (conspiracy to launder money).

### A. The conspiracy's damage of and theft from a server in Ashburn, Virginia were overt acts in furtherance of its conspiracy to commit extortion (Count One)

The conspiracy's damage of and theft from the Ashburn server were overt acts in furtherance of its conspiracy to commit extortion. Count One alleges that the defendant conspired to (i) transmit a threatening communication to injure the property or reputation of the addressee with the intent to extort money from a person, firm, association, or corporation; and (ii) to receive, possess, conceal, or dispose of money obtained from an extortionist communication, all in violation of 18 U.S.C. § 371. As described in the Indictment, the conspiracy gained unauthorized access to a United States company's server in Ashburn, Virginia. *See* Indict. at ¶ 17(Y). That access allowed the conspiracy to obtain "the company's database …and [other] information . . . from the company." *Id*. at ¶ 17(Z). The unauthorized computer access and thefts were actions that furthered the extortionist objects of Count One. Without that access and that stolen information, the conspiracy could not have transmitted threatening communications or received extorted money. If the server had not been hacked, the company would have had no reason to respond to such threats or pay money. The conspiracy's threats

11

would have been particularly ineffective without accessing the company's server since all of the conspirators were overseas, and thus the only threat they posed to the company was via that server. The conspirators also communicated extortionist threats to the company, including a demand of €20,000 to stop "the hack" of the server. *Id*. Thus, there were multiple overt acts in this District that furthered the extortion conspiracy.

Rather than assess whether these overt acts furthered the extortion conspiracy, the defendant seeks to add a new requirement for establishing venue for conspiracies. Though acknowledging that venue is proper for all defendants in a conspiracy wherever "'any overt act in furtherance of the conspiracy transpires,'" Def. Mot. at 5 (quoting *Bowens*, 224 F.3d at 311 n.4), the defendant asserts that the overt acts "must" also "relate to the essential conduct elements of the applicable offense." Def. Mot at 5. While the motion is unclear what "applicable offense" means, the defendant appears to be asserting that the only overt acts that can establish venue for a conspiracy to commit an offense are acts that would establish venue for a substantive violation of the offense. But conspiracies and substantive violations are different criminal offenses involving different elements and different conduct. Most notably, whereas a substantive violation involves completion of an unlawful act, a conspiracy need only involve acts in furtherance of the unlawful act. Even if such a standard were to apply to conspiracies, the defendant overlooks that conspiracy is the only "applicable offense" in Count One. One of the elements of a conspiracy offense is the commission of an overt act in furtherance of the conspiracy. *See, e.g., United States v. Tucker*, 376 F.3d 236, 238 (4th Cir. 2004). Thus, an overt act *is* an "essential conduct element of the applicable offense" for a conspiracy charge – that is why the Supreme Court and the Fourth Circuit have consistently held that venue is proper in any district in which an overt act in furtherance of the conspiracy was committed. *See United States*

*v. Smallwood*, 293 F. Supp. 2d 631, 639 (E.D. Va. 2003) ("Given that overt acts in furtherance of this conspiracy occurred in this district, it follows that an essential conduct element of the offense . . . occurred in this district."); *see also Mitchell*, 70 F. App'x at 713 (noting the leading Supreme Court cases analyzing the meaning of essential conduct elements "emphasize that . . . venue is proper for a conspiracy . . . where any conspirator carried out overt acts"); *United States v. Jefferson*, 674 F.3d 332, 367 (4th Cir. 2012) ("a conduct element is one of action").

The defendant's case citations reflect this failure to acknowledge the difference between conspiracies and substantive violations. The motion cites to a single, unpublished opinion, *United States v. Anyakoha*, for its assertion that overt acts must relate to the essential conduct elements of the applicable offense. *See* Def. Mot. at 5.  In *Anyakoha*, however, the only question before the court was venue on a substantive drug count since the defendant conceded that venue was proper for the conspiracy counts. *Anyakoha*, 188 F.3d 503, 1999 WL 635654 at *1 (4th Cir. Aug. 20, 1999) (unpublished) ("Anyakoha correctly concedes that the Eastern District of Virginia was the proper venue for the two conspiracy counts."). The Court in *Anyakoha* offered no holding, dicta, or opinion on how to determine venue for a conspiracy. In fact, none of the cases that the defendant cites in its discussion of Count One involve a case where venue was contested for a conspiracy. *See* Def. Mot. at 6-9; *United States v. Clenney*, 434 F.3d 780 (5th Cir. 2005) (contesting venue for substantive parental kidnapping conviction); *Jefferson*, 674 F.3d at 332 (contesting venue for substantive wire fraud conviction); *United States v. Villarini*, 238 F.3d 530 (4th Cir. 2001)  (contesting venue for substantive money laundering conviction). To the extent the defendant's cases discuss conspiracies, they affirm that venue is proper in a conspiracy charge "wherever any overt act in furtherance of the conspiracy transpires." *Bowens*, 224 F.3d at

311 n.4. The defendant's entire discussion of venue for Count One thus applies the wrong standard.

The conspiracy's overt acts in furtherance of its extortionist goals provide a second way that venue is proper for Count One. The ultimate purpose of their damage of and theft from the Ashburn server was to extort money from a U.S company.

### B. The conspiracy's acts to obtain money from a U.S. company via a server in Ashburn were overt acts in furtherance of its conspiracy to launder money

The same overt acts in this District that furthered the conspiracy to commit extortion were in furtherance of the conspiracy to launder money. The money laundering conspiracy in Count Three alleges that the defendant and his co-conspirators conspired to commit three objects: (i) conduct a financial transaction involving proceeds of a specified unlawful activity to promote the specified unlawful activity; (ii) conduct a financial transaction involving proceeds of a specified unlawful activity knowing that the transaction was designed to conceal and disguise the nature, location, source, ownership or control of the proceeds; and (iii) transmit money from the United States to outside the United States in order to promote a specified unlawful activity. All three objects involve monetary transactions or money derived from specified unlawful activity. In this case, the specified unlawful activities were transmitting extortionist communications (18 U.S.C. § 875) and committing computer intrusions (18 U.S.C. § 1030). Indict. at ¶ 21. Accordingly, overt acts that furthered the conspiracy's efforts to obtain money, including money derived from extortionist communications and computer intrusions, furthered the conspiracy's money laundering objectives. Put more simply, without money, there is no laundering.

As detailed in the Indictment, a central purpose of the conspiracy's computer intrusions, theft of information, and threatening communications was to obtain money. *See, e.g.*, Indict. at ¶

16. Some of the computer intrusions and thefts occurred in this District via the Ashburn server. *Id.* at ¶ 17(Z). Those acts were the foundations of the conspiracy's demands for money from the U.S. company. It was only after the conspiracy gained unauthorized computer access and stole information that it demanded of €20,000 to stop "the hack." *Id*.

In spite of the clear connection between the above acts and money laundering, the defendant contends that no overt acts of the money laundering conspiracy occurred in this District. *See* Def. Mot at 10. While acknowledging the Ashburn server might be "relevant" to a conspiracy to obtain money from the specified unlawful activities, the defendant contends those acts are insufficient to establish venue for a money laundering conspiracy because laundering only occurs after money has been obtained. *Id.* at 11. The defendant's analysis, however, confuses the substantive offense of laundering money with a conspiracy to launder money. The thrust of the defendant's argument relies on a Fourth Circuit case involving substantive money laundering counts, not a conspiracy to launder money. *See Villarini*, 238 F.3d at 531-32. In its discussion of venue for *substantive* money laundering violations, the Fourth Circuit held that the fact that money was unlawfully generated in a district "is not sufficient, standing alone, to establish proper venue in that district." *Id.* at 535. But this case involves a conspiracy to launder money. Whether there is venue in this district to charge the defendant with a substantive money laundering offense is not a question before this Court.

The defendant's misapplication of conspiracy law mirrors an argument that the Fourth Circuit rejected in *United States v. Green*. In *Green*, the defendant was convicted of two conspiracies: drug trafficking and money laundering. *Green*, 599 F.3d at 363. Although the conspiracy transported drugs from Florida to Virginia, the defendant only laundered money in Florida. *See id.* at 373. In holding that there was venue for the money laundering conspiracy in

15

the Eastern District of Virginia, the court noted that "the acts aimed at obtaining the proceeds from trafficking in illegal narcotics also comprised acts taken in furtherance of the parallel money laundering conspiracy." *Id.* at 372; *see also Mitchell*, 70 F. App'x at 713 (finding that for purposes of venue, the drug conspiracy count at issue was "intertwined with the money laundering count"). Here, the conspiracies were likewise intertwined – the acts aimed at obtaining money from computer intrusions and extortion also comprised acts in furtherance of the money laundering conspiracy. The Fourth Circuit noted in *Green* that the fundamental flaw in the defendant's argument was that he was treating the conspiracy offense "as if it were a substantive money laundering offense rather than what it is: conspiracy to commit a money laundering offense." *Id.*

The defendant and his co-conspirators engaged in multiple overt acts in the Eastern District of Virginia that furthered their conspiracies, including their conspiracy to launder money. These overt acts provide additional means for establishing venue in this District for Count Three.

## CONCLUSION

There are multiple avenues that the Court can take to find that venue is proper in the Eastern District of Virginia for Counts One and Three. Pursuant to 18 U.S.C. § 3238, venue is proper in this District because both conspiracies began overseas, were partially committed overseas, and the defendant was first brought to this District to face charges in this case. Pursuant to long-standing case law, 18 U.S.C. § 3237, and 18 U.S.C. § 1956(i)(2), venue is also proper in this District because overt acts in furtherance of both conspiracies were committed here. Accordingly, regardless of which avenue the Court takes, the defendant's motion to dismiss for

improper venue should be denied.

                                        Respectfully submitted,

                                        Dana J. Boente
                                        United States Attorney

                                                  /s/
                                        Brandon L. Van Grack
                                        Special Assistant United States Attorney
                                        Maya D. Song
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        Eastern District of Virginia
                                        2100 Jamieson Avenue
                                        Alexandria, Virginia 22314
                                        Ph: (703) 299-3700
                                        Fax: (703) 299-3982
                                        maya.song@usdoj.gov
                                        brandon.van.grack2@usdoj.gov

                                        Scott K. McCulloch
                                        Nathan M. F. Charles
                                        Trial Attorneys, National Security Division
                                        United States Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of August 2016, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic notification to the following counsel of record.

Geremy C. Kamens
Federal Public Defender
Eastern District of Virginia
1650 King Street, Suite 500
Alexandria, VA 22314
geremy_kamens@fd.org

*Counsel for defendant Peter Romar*

By:      /s/
Maya D. Song
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Ph: (703) 299-3707
Fax: (703) 299-3981
maya.song@usdoj.gov