IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 1:16-cr-140 |
| PETER ROMAR,<br>(a/k/a "PIERRE ROMAR"), | The Hon. Claude M. Hilton |
| | Hearing Date: Sept. 30, 2016 |
| Defendant. | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR FAILURE TO STATE AN OFFENSE**

Beginning in 2013, the defendant, PETER ROMAR, conspired with persons located in Syria to hack into the computer networks of companies in the United States and overseas, extort money from those hacking victims, and launder the proceeds of their illegal activity. For these crimes, the government has charged the defendant with three conspiracies: conspiracy to transmit extortionist communications and receive extortionate funds, in violation of 18 U.S.C. § 371 (Count One); conspiracy to commit computer intrusions, in violation of 18 U.S.C. § 1030(b) (Count Two); and conspiracy to launder money, in violation of 18 U.S.C. § 1956(h) (Count Three). The defendant now moves to dismiss portions of Counts One and Two, and to dismiss Count Three entirely. *See* ECF No. 26 ("Def. Mot.").

On Counts One and Two, the defendant seeks the piecemeal dismissal of allegations that implicate victims who are described in the Indictment as foreign corporations (namely, Victims 1 and 5 in the Indictment). The underlying premise of the defense's motion is that counts in an indictment may be sliced into smaller and smaller pieces—first by separating the multiple

objects of a criminal agreement where applicable, and then by further slicing the counts into victim-specific acts within each object—and then each constituent sub-slice of the count analyzed for jurisdiction as if it were an independent substantive count. That premise is wrong. Counts One and Two must be analyzed in their entirety, as the grand jury returned them. Tellingly, the defendant does not argue that jurisdiction is lacking on either Count in its entirety—and he cannot, for the Court has jurisdiction over the entire Indictment in this case. Even if the defendant had articulated what he seeks in the manner provided by the Federal Rules of Criminal Procedure, seeking to strike portions of those Counts as surplusage under Rule 7(d), he would still fail: the language he protests is relevant, not inflammatory and not prejudicial.

Defendant's arguments seeking to dismiss Count Three are similarly defective. He asserts that the Indictment does not allege facts that satisfy 18 U.S.C. § 1956(f), which describes the circumstances in which money laundering conduct abroad may be prosecuted under the statute. But his arguments misread the controlling rules of pleading and the Indictment's allegations. An indictment need not plead satisfaction of Section 1956(f), and pre-trial motions to dismiss on the fact-intensive Section 1956(f) analysis are generally improper under Rule 12(b)(1). Even were that not so, however, the Indictment alleges sufficient facts to show that Section 1956(f) applies—namely, that the conspirators' conduct met the $10,000 minimum currency threshold and that "at least some" conduct occurred in the United States. The government's proof at trial will demonstrate that defendant's conduct is punishable under the statute. Defendant is therefore not entitled to dismissal of Count Three as a matter of law.

Accordingly, the motion should be denied in its entirety.

## FACTUAL BACKGROUND

On June 8, 2016, a grand jury returned a three-count Indictment against the defendant, charging him with three conspiracy violations.[1] Count One charges an agreement to extort money from victims by transmitting extortionist communications, in violation of 18 U.S.C. § 875(d), and receiving money from such victims, in violation of 18 U.S.C. § 880, all in violation of 18 U.S.C. § 371. Count Two charges an agreement to commit computer intrusions, in violation of 18 U.S.C. § 1030(b), with four substantive objects under Section 1030(a). Count Three charges an agreement to launder money, in violation of 18 U.S.C. § 1956(h), with three objects under that statute: promotion under 18 U.S.C. § 1956(a)(1)(A)(i), concealment under 18 U.S.C. § 1956(a)(1)(B)(i), and international promotion under 18 U.S.C. § 1956(a)(2)(A).

All three Counts involve conduct that occurred inside the United States. As to Count One, the Indictment alleges that U.S. companies were extorted by the conspirators. Indictment (ECF No. 17) ("Indict.") ¶¶ 17(D)-(H), (U), (Y)-(CC). As to Count Two, the Indictment alleges that U.S. companies suffered harms addressed by Section 1030 (*id.* at ¶¶ 9-11), including spearphishing attacks (*id.* at ¶ 7), website defacement (*id.* at ¶ 17(E)), and theft of data from protected computers (*id.* at ¶ 17(G)). Finally, as to Count Three, the Indictment alleges that funds from U.S. companies were laundered, including to locations outside the United States, and that such laundering promoted violations of Section 1030 and 875. *See, e.g., id.* at ¶ 22(B) (describing defendant's receipt of extortionate funds from a U.S. company, at a location outside the United States); ¶ 21(A) (alleging the conspirators used such proceeds to further their violations of 18 U.S.C. § 1030); and ¶¶ 17(D), 17(E), 17(U), and 17(W) (additional allegations

[1] To limit unnecessary repetition, the factual backgrounds provided the Government's Opposition to Defendant's Motion To Dismiss Counts One And Three Of The Indictment For Improper Venue, and the Government's Opposition to Defendant's Motion for a Bill of Particulars (both filed contemporaneously with this Opposition) are incorporated herein by reference.

of conspirator-compelled money transfers by companies to defendant). The Indictment alleges that the conspirators together attempted to obtain at least $500,000 from at least 14 victims. *Id.* at ¶ 7. It also alleges in related allegations that the conspirators sought different amounts of money from their victims, agreeing at one point to obtain €15,200 from Victim 1 (*id.* at ¶¶ 17(B), 17(I), and 17(J)), €105,000 from Victim 2 (*id.* at ¶ 17(F)), €20,000 from Victim 3 (*id.* at ¶ 17(Z)), and €7500 from Victim 4 (*id.* at ¶ 17(FF)).

## ARGUMENT

The defendant seeks to carve up the Counts alleged against him so as to submit only portions of the government's charges for the Court's review and which, were the defendant's depiction of his charges and caselaw accurate, might warrant dismissal. But this count-carving exercise is neither necessary nor permissible. Each of the Counts alleged is properly before the Court. Counts One and Two allege conspiracies involving overt acts in the United States over which this Court has jurisdiction, and Count Three need not plead satisfaction of Section 1956(f)'s explicit extraterritoriality provision—though it does, as explained below.

### I. The Court Has Territorial Jurisdiction Over Counts One and Two

As jurisdiction is analyzed as to the charged conspiracies in Counts One and Two as a whole, rather than sub-components thereof, and Counts One and Two both allege criminal conduct against victims in the United States, the Court has jurisdiction over those Counts in their entirety.

#### a. Jurisdiction over a conspiracy charge is analyzed as to the criminal agreement alleged, not sub-components thereof

The three conspiracy charges in the Indictment describe criminal agreements—not a series of substantive crimes. The essence of a conspiracy is a criminal agreement among the conspirators. *See Iannelli v. United States*, 420 U.S. 770, 777 (1975). Jurisdiction is thus

analyzed as to that criminal agreement, not every discrete act and victim. *See United States v. Smith*, 452 F.3d 323, 335 (4th Cir. 2006) ("In a conspiracy case, a prosecution may be brought in any district in which any act in furtherance of the conspiracy was committed."); *see also United States v. Boswell*, 372 F.2d 781, 783 (4th Cir. 1967) (jurisdiction exists where any overt act in furtherance of a conspiracy occurred); *United States v. Schmucker-Bula*, 609 F.2d 399, 402 (7th Cir. 1980) (where defendant acted as part of overseas conspiracy that intended to import cocaine to the United States, "we need not dwell at length on the jurisdictional issue. A sovereign has jurisdiction to punish crimes that occur within its territory") (citing *United States v. Winter*, 509 F.2d 975, 982 (5th Cir. 1975)); *United States v. Williams*, 589 F.2d 210, 213 (5th Cir. 1979), *on reh'g*, 617 F.2d 1063 (5th Cir. 1980) (the court has "jurisdiction over a conspiracy and all those proved to be conspirators if the conspiracy is designed to have criminal effects within the United States.").

The defendant cites no authority to the contrary. For his core assertion that the Counts may be carved up and jurisdiction analyzed as to particular victims and overt acts, he invokes cases that do not even touch on jurisdictional analysis. *Cf. United States v. Parris*, 88 F. Supp. 2d 555, 561 (E.D. Va. 2000) (removing a conspiracy object from the jury's consideration during trial for lack of evidence, without any jurisdictional analysis); *United States v. Kanchanalak*, 37 F. Supp. 2d 1, 3 (D.D.C. 1999) (dismissing a conspiracy object where the government misstated the elements of the object violation, without any jurisdictional analysis) (both cited in Def. Mot. at 8). There is simply no authority for the proposition that a conspiracy over which a court has jurisdiction may be whittled down to only that conduct over which jurisdiction would exist if the government had instead charged a substantive violation of the same statute.

The defendant's failure to identify supporting authority is unsurprising because he is not really seeking dismissal of Counts One and Two, but the striking of alleged surplusage within those Counts. However, a motion seeking such relief would be hopeless. "[A] motion to strike surplusage from the indictment should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006) (applying F.R.Crim.P. 7(d)) (citations omitted). Certainly discussion of victims targeted and harmed by the defendant and his co-conspirators is relevant to the charges alleged, and defendant could not argue otherwise.

**b. Counts One and Two allege harms to U.S. victims, providing territorial jurisdiction**

It is well-established that criminal acts against U.S. victims such as those alleged in the Indictment create territorial jurisdiction. Acts "done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify the exercise of territorial jurisdiction." *United States v. Ayesh*, 762 F. Supp. 2d 832, 836 (E.D. Va. 2011), *aff'd*, 702 F.3d 162 (4th Cir. 2012) (internal quotations omitted). The defendant acknowledges this longstanding principle, seeking to dismiss only those portions of Counts One and Two alleged against victims not described in the Indictment as present in the United States (Victims 1 and 5).

As the defendant recognizes, the Indictment alleges numerous overt acts in furtherance of the Count One and Count Two conspiracies that harmed U.S. victims inside the United States. Among other allegations, the Indictment asserts that that the conspirators gained unauthorized access to the networks of, and extorted or attempted to extort, U.S. victims, including by criminal conduct in the Eastern District of Virginia and California. *See, e.g.*, Indict. at ¶¶ 7, 9-11. It alleges, for example, that the conspirators sent an email to Victim 2 in California, informing Victim 2 that the conspirators had hacked its computer network, threatened to do so again, and

would compromise the company's data unless it paid a ransom. The Indictment further alleges that when the demanded ransom was not paid, the conspirators used their unauthorized access to Victim 2's network to publicly compromise the websites of Victim 2 and some of its clients, and then made a new demand for a payment of €105,000 to halt the compromise. The conspirators ultimately obtained an extortion payment from Victim 2 of approximately €1039.13. Indict. at ¶¶ 17(D)-(F), (W). The Indictment further alleges that when Victim 3, a U.S. company, failed to send the extortion payment sought by the conspirators, the conspirators (specifically Co-Conspirator 1) used "Victim 3's customer email lists to distribute spam emails to thousands of Victim 3's customers." Indict. at ¶ 17(CC). The Indictment alleges as well that the conspirators emailed Victim 4 to demand a ransom payment, specifically instructing the company that due to Co-Conspirator 1's location in Syria, there might be difficulties sending money as the "U.S. does not deal with the Syrian banks because of U.S.A. sanctions." *Id.* at ¶ 17(FF).

**c. The defendant's lengthy extraterritoriality argument analyzes the wrong law, incorrectly**

In its Motion, the defendant argues at length that Supreme Court precedents forbid applying a statute extraterritorially absent explicit congressional intent to permit such application. *See generally* Def. Mot. (citing *RJR Nabisco, Inc. v. European Community*, --- U.S. ---, 136 S. Ct. 2090 (2016) and *Morrison v. Nat' Australia Bank Ltd.*, 561 U.S. 247, 255 (2010)). This much is correct, and irrelevant. *Morrison* and its progeny have nothing to say about territorial jurisdiction; here, that line of cases would be relevant only if the overseas victims that the defendant protests stood alone in substantive counts or the conspiracy counts lacked U.S. victims and conduct. Regardless of whether the language in Sections 875, 880, and 1030 proclaiming their overseas application is sufficiently precise to overcome the general presumption against extraterritorial application of U.S. law, the defendant does not and cannot

contend that such analysis is relevant where the Indictment clearly alleges that the defendant, situated overseas, conspired to harm U.S. victims inside the United States.

**d. Counts One and Two also charge violations that would apply extraterritorially if no territorial jurisdiction existed**

Even if the defendant's extraterritoriality analysis were relevant, the defendant is incorrect as to the extraterritorial reach of the statutes underlying Counts One and Two. As to Count One, the text of Section 875(d) explicitly demonstrates congressional intent to apply the statute to overseas conduct, even without recourse to the jurisdiction created by U.S. victims. The addition of "foreign" to "interstate or foreign commerce" can have no purpose other than to address foreign threats. And, while *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) stated that simple references to "foreign" "in [statutory] definitions of commerce" may not demonstrate extraterritoriality, the addition of "foreign commerce" to Section 875(d)'s (and thus Section 880's) reach is broader and more consequential than the kind of language *Morrison* intended to address. The Section 875(d) language is not definitional but rather squarely in the description of the criminal conduct to be prohibited: "Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication . . . shall be fined under this title or imprisoned . . .." To fail to extend the statute to persons and transactions that the statute asserts may be jailed for its violation would frustrate Congress' explicit intent. *See United States v. Ivanov*, 175 F. Supp. 2d 367, 374-75 (D. Conn. 2001) (construing identical language in Section 1030 to denote congressional intent to apply the statute extraterritorially).

Section 1030 applies extraterritorially as well. As originally enacted, it explicitly extended to extraterritorial conduct. *Id.* In 2001, though, the USA PATRIOT Act amended Section 1030(e)(2)(B) to specifically include in its definition of a "protected computer" covered

by the statute a computer that "is used in interstate or foreign commerce, including a computer *located outside the United States* that is used in a manner that affects interstate or foreign commerce or communication of the United States." 18 U.S.C.§ 1030(e)(2)(B)(emphasis added). "Outside the United States" means what it says, and clarifies the statute's extraterritorial application.[2]

## II. Count Three Sufficiently Pleads an Offense Under Rule 7

Count Three pleads every essential element of the charged Section 1956(h) offense of conspiracy to commit money laundering, and more, providing the defendant with significantly greater notice of the scope and nature of the charges against him than the law requires. The Fourth Circuit's instructions on the essential Section 1956(h) elements that must be pleaded in a valid indictment make clear that there is no need to plead satisfaction of Section 1956(f) when the government intends to invoke Section 1956(f) for its proof at trial. Notwithstanding Rule 7's liberal pleading standard, the allegations in the Indictment more than sufficiently put defendant on notice about how the government will prove the Section 1956(f) elements at trial.

---

[2] The defendant's reliance on *United States v. Wadford*, 331 F. App'x 198, 202 (4th Cir. 2009) is misplaced. That case did not analyze the reach of the language at issue here, and in any event found that the computer in question was in fact protected. Those cases that actually have sought to determine the reach of the "protected computer" definition have held that a connection to the internet suffices under the statute. *See, e.g., United States v. Nosal*, 676 F.3d 854, 859 (9th Cir. 2012) (stating that "'protected computer' is defined as a computer affected by or involved in interstate commerce—effectively all computers with Internet access"); *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007) ("[The defendant]'s admissions demonstrate that the Salvation Army's computers fall within the statutory definition of a 'protected computer.' Trotter admitted the computers were connected to the Internet."); *NCMIC Finance Corp. v. Artino*, 638 F. Supp. 2d 1042, 1060 (S.D. Iowa 2009) (concluding computers qualified as protected computers because they were connected to Internet); *Continental Group, Inc. v. KW Property Management, LLC*, 622 F. Supp. 2d 1357, 1370 (S.D. Fla. 2009) ("A connection to the internet is 'affecting interstate commerce or communication.'").

**a. The Government Pleads More Than is Necessary Under Section 1956(h)**

An indictment need only inform the defendant of the charges against him, and address the required elements for the charges alleged. *See* Fed. R. Crim. P. 7(c); *United States v. Resendiz-Ponce*, 127 S.Ct. 782, 789 (2007) (stating that the Federal Rules were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254-57 (1988) ("a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants"). An indictment is "read . . . to include facts which are necessarily implied by the specific allegations made." *United States v. Rigas*, 490 F.3d 208, 228–29 (2d Cir. 2007). Importantly, a count meeting the requirements of Rule 7 may not be dismissed for failing to include additional information. *Compare United States v. Hooker*, 841 F.2d 1225, 1231 (4th Cir. 1988) (not harmless to fail to allege effect on interstate commerce that was an essential element for Travel Act conviction), *with United States v. Fern*, 155 F.3d 1318, 1325 (11th Cir. 1998) (indictment sufficient despite failure to allege willfulness and materiality elements of Clean Air Act because willfulness and materiality are not "essential elements" of the offense).

The essential elements of a Section 1956 conspiracy require the government to allege a *de minimis* effect on interstate commerce—not compliance with Section 1956(f). The essential elements of 18 U.S.C. 1956(h) are "(1) the existence of an agreement between two or more persons to commit one or more of the substantive money laundering offenses proscribed under 18 U.S.C § 1956(a) or § 1957; (2) that the defendant knew that the money laundering proceeds had been derived from an illegal activity; and (3) the defendant knowingly and voluntarily became part of the conspiracy." *United States v. Green*, 599 F.3d 360, 371 (4th Cir. 2010). *See also United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005). The essential elements of the

underlying offense recite the substantive statutory language. For example, the elements of a concealment charge under Section 1956(a)(1)(B) are:

> (1) the defendant conducted or attempted to conduct a financial transaction having at least a de minimis effect on interstate commerce or involving the use of a financial institution which is engaged in, or the activities of which have at least a de minimis effect on, interstate commerce; (2) the property that was the subject of the transaction involved the proceeds of specified unlawful activity; (3) the defendant knew that the property involved represented the proceeds of some form of unlawful activity; and (4) the defendant knew that the transaction was designed in whole or part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity.

(citations omitted); *see also United States v. Singh*, 518 F.3d 236, 248 (4th Cir. 2008); *United States v. Wilkinson*, 137 F.3d 214, 220 (4th Cir. 1998); *United States v. Peay*, 972 F.2d 71, 74 (4th Cir. 1992). Proof of a Section 1956(h) conspiracy does not require proof of overt acts. *Green*, 599 F.3d at 372. A properly pleaded Section 1956(h) count need not even specify the kind of money laundering the defendant conspired to undertake. *See Bolden*, 325 F.3d at 492 ("[The Section 1956(h) count] was not required to allege the specific type of money laundering the Boldens conspired to commit; [where multiple substantive money laundering counts had been alleged] it was simply alleging a multiple-object conspiracy.").

Here, Count Three tracks the statutory language and addresses the essential elements of not only Section 1956(h), but also (as *Bolden* holds unnecessary) of each of the three object substantive offenses. *See Bolden*, 325 F.3d at 492; Indict. ¶¶ 20-22. Moreover, by incorporating the general allegations of the Indictment (*id.* at ¶¶ 1-13), the general manner and means by with the conspirators agreed to extort money from their victims (*id.* at ¶16), and additional manner and means as they pertained specifically to the money laundering conspiracy (*id.* at ¶ 22), Count Three provides the defendant with far more detail than Rule 7 requires. In addition to the Indictment's description of the charge in Paragraph 21, and numerous other facts regarding the government's theory, the defendant is informed that he and his co-conspirators are accused of

demanding more than $500,000 in aggregate from at least 14 victims (*id.* at ¶ 7); that the defendant played a key financial role in routing payments from the conspirators' extortion victims to Co-Conspirator 1 and others in Syria (*id.* at ¶ 16(D)); and that defendant directly participated in routing a €1039.13 payment from a victim in the United States via Western Union (*id.* at ¶¶ 9, 22(B)), and three payments totaling €5000 from a Swiss victim (*id.* at ¶¶ 12, 22(C)). Count Three also explicitly alleges that both the Section 1956(a)(1)(A)(i) and Section 1956(a)(1)(B)(i) conspiracy objects included agreement to conduct or attempt to conduct financial transactions "affecting interstate and foreign commerce" (*id.* at ¶¶ 21(A)-(B)); and that the Section 1956(a)(2)(A) object included agreement to actual or attempted transfer of funds across the border of the United States. *Id.* at ¶ 21.C.

**b. Pre-trial challenges to indictments under Section 1956(f) are generally barred**

A defendant generally may not challenge the government's ability to prove satisfaction of Section 1956(f) before trial. A party "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). It is not proper, however, to weigh the sufficiency of the evidence underlying the indictment on a pretrial motion to dismiss, unless the government has already made "a full proffer of the evidence it intends to present at trial." *United States v. Perez*, 575 F.3d 164, 166 (2d Cir. 2009) (citation omitted). This is because an indictment is "not meant to serve an evidentiary function," but rather, "to acquaint the defendant with the specific crime with which he is charged, allow him to prepare his defense, and protect him from double jeopardy." *United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007) (citation omitted).

Thus fact-based defenses that cannot be determined without a trial on the merits, or that essentially seek to measure the government's proof before trial, may not be resolved pre-trial.

The claim raised by the defendant asserting that the government has not shown connections to the United States or laundering transactions of magnitude sufficient to satisfy Section 1956(f) is therefore not one that the Court can resolve before trial. The only court that appears to have considered the issue held that an alleged failure to satisfy Section 1956(f) is not a defense that may be raised pre-trial without the benefit of the government's evidence. *See United States v. Galvis-Pena*, No. 1:09CR25, 2012 WL 425240, at *4 (N.D. Ga. Feb. 9, 2012) ("the issue of extraterritorial jurisdiction hinges on whether the underlying acts of money laundering occurred at least in part in the United States. The issue is intermeshed with questions going to the merits of the case because the Court would have to consider evidence of the alleged criminal conduct in order to resolve it. As a result, the issue is for the jury to decide . . . ."). A district court in this Circuit reached the same conclusion using similar analysis in a case that considered the government's pleading of *de minimis* effect on interstate and foreign commerce, instead of Section 1956(f). In *United States v. Hardin*, No. 3:12CR13, 2012 WL 5363322, at *2 (W.D.N.C. Oct. 30, 2012), the government pleaded a Section 1956(h) conspiracy, and defense moved to dismiss asserting that the government's allegation of *de minimis* effect on interstate and foreign commerce was legally insufficient. The court denied the motion because the charge was properly pleaded, and any further analysis of defendant's contention would require analysis of the government's evidence. In denying defendant's motion, the court noted that "[w]hether the government will be able to introduce sufficient evidence on each and every element of the offenses charged has yet to be seen, and defendants will have an adequate forum under Rule 29 for testing the government's proof at the close of the government's case." *Id.*

**c. Though not required, the Government has pleaded satisfaction of Section 1956(f)**

Although the government need not plead satisfaction of Section 1956(f), it has done so in the Indictment. Section 1956(f) provides jurisdiction over conduct by non-U.S. citizens when (1) the conduct occurs in part in the United States; and (2) the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.

*First*, the Indictment pleads satisfaction of Section 1956(f)'s U.S. nexus requirement. The scope of conduct that may create the connection to the United States is broad. The "occurs in part in the United States" clause is not limited to conduct that itself constitutes a violation of Section 1956. While "conduct" is not defined by the statute, the legal backdrop against which Congress legislated and the case law show that the concept is broad. In a case like this one where the money laundering conspirators also conspired to commit the relevant specified unlawful activity, any number of allegations of payments from victims to conspirators may satisfy this requirement.[3] This is because:

(a) *Green* holds that participation in a related criminal conspiracy intended to obtain funds to launder—there, a narcotics conspiracy—may be "part and parcel" of a properly alleged money laundering conspiracy, and clarifies that overt acts taken in furtherance of the related conspiracy are also properly considered part of the linked money laundering conspiracy. 599 F.3d at 371-72. Further, as described above at part I.A, federal conspiracy jurisdiction has long been measured using the location of overt acts. An overt act in furtherance of that conspiracy need not be criminal in nature but can be any step taken as part of a scheme to transfer funds for a purpose proscribed by the statute. *See United States v. Sanchez*, 932 F.2d 964 (4th Cir. 1991)

[3] *See* Def. Mot. at n.7 (acknowledging, though in a manner not entirely consistent with other assertions in the Motion, that the allegations elsewhere in the Indictment, which describe payments from victims to the conspirators, would satisfy Section 1956(f) where such victims were in the United States).

("It has been established beyond challenge that an overt act need not be the substantive crime that is the object of the conspiracy, nor even criminal in character; its function is to show the operation of the conspiracy."). Section 1956(f) was enacted against this backdrop, and Congress could have defined "conduct" if it had intended to change the prevailing rule, but it did not.

(b) Where an object of a money laundering conspiracy is international promotion in violation of Section 1956(a)(2)(A), money transfers that occur prior to the production of any proceeds through an underlying specified unlawful activity are indictable, even as substantive offenses, so long as the transfer was intended to further a specified unlawful activity. *See United States v. Caplinger*, 339 F.3d 226, 232 (4th Cir. 2003) (money laundering validly alleged where defendant induced victims to send him money overseas even though the underlying specified unlawful activity, fraud, was not complete until the same transactions were accomplished); *see also United States v. Stein*, No. 93CR375, 1994 WL 285020, at *4–5 (E.D. La. June 23, 1994) (holding that financial transfers into and out of accounts in the United States satisfied the U.S. nexus requirement in Section 1956(f)).[4] And,

(c) Where the conspiracy objects include transacting in specified unlawful activity proceeds, funds are considered proceeds where they stem from a "completed phase of an ongoing offense." *Bolden*, 325 F.3d at 487–88 (4th Cir. 2003) (rejecting defendant's contention that proceeds are not generated until the underlying specified unlawful activity is complete). In an ongoing scheme with multiple victims, proceeds will exist as soon as they come within the control of the conspirators, even if the evidence shows that the scheme was not yet completed. *See id.*; *see also United States v. Prince*, 214 F.3d 740, 747 (6th Cir. 2000) (stating that funds are

---

[4] *Cf. United States v. Lloyds TSB Bank PLC*, 639 F. Supp. 2d 314, 319 (S.D.N.Y. 2009) (a civil case holding that because the defendant was not a participant in the underlying criminal conspiracy that produced the proceeds to be laundered, that underlying conduct, which took place in the United States, could not be used to satisfy Section 1956(f)—the exact opposite of the case here).

proceeds even before receipt by conspirators, and even in possession of a third party, as soon as they come under the conspirators' control). Such proceeds may promote ongoing specified unlawful activities directed at new victims, or be laundered as part of the ongoing scheme; and such acts may be "conduct" sufficient for Section 1956(f) purposes.[5]

Here, the Indictment pleads at least five different allegations or groups of allegations that fall within the broad definitions of "conduct" that satisfy Section 1956(f):

- Count Three alleges specific money laundering crimes against a U.S. company (Victim 2), including a financial transfer from Victim 2 to the defendant. Indict. at ¶ 22(B). Such overt acts suffice to grant jurisdiction over a Section 1956(h) conspiracy.
- The Victim 2 transfer was not just an overt act but a completed Section 1956(a)(2)(a) violation—a transfer across the U.S. border in furtherance of specified unlawful activity , *i.e.*, violations of 18 U.S.C. §§ 1030 and 875(d). *See Caplinger*, 339 F.3d at 232.
- The Victim 2 transfer, received from the United States by the defendant in December 2013 (Indict. at ¶ 22.B), promoted specified unlawful activity carried

[5] Further, where a conspiracy is charged with multiple objects, each object is an "alternative legal theory of liability." *Griffin v. United States*, 502 U.S. 46, 60 (1991); *see also United States v. Bolden*, 325 F.3d 471, 492 (4th Cir. 2003). Should the government fail to produce sufficient evidence for any of these alternate theories in the course of trial, the Supreme Court has announced it "preferable" to remove that theory from the jury's consideration rather than allow it to be deliberated upon. *Id*. Where the jury considers multiple theories of liability for a given conspiracy count, though, it may convict by finding the defendant guilty on any or all of those counts. *Id*.; *see also Parris*, 88 F.Supp.2d. at 561. Thus, even if the government had not yet sufficiently identified conduct going to one of the objects in Count Three—which it has—the Count must nonetheless survive the instant Motion and the government be given the opportunity to present its proof at trial.

      out in the United States, and specifically in the Eastern District of Virginia, in March 2014. *Id.* ¶ 17(Y).

- Paragraphs 17(U) and 17(W) of the Indictment allege specified unlawful activity - promoting financial transfers from victims in the United States to a conspirator outside it. Again, under *Caplinger* such transfers are themselves completed money laundering transactions. 339 F.3d at 232.

- Paragraph 17 of the Indictment alleges numerous additional overt acts in the United States. For example, Paragraph 17(D) alleges that Co-Conspirator 1 emailed Victim 2 (a U.S. corporation) on or about November 28, 2013, to demand the ransom the conspirators sought to launder. Paragraph 17(E) alleges that Co-Conspirator 1 sent banking and wire instructions to that same victim in the United States. Other paragraphs allege an attempt to obtain funds to launder from Victims 3 and 4, which involved conduct in the United States. *Id.* at ¶¶ 17(Y)-(HH).

*Second*, as to the monetary threshold, the defendant does not and cannot point to any authority for his proposition that only completed transactions may count toward the $10,000 threshold in Section 1956(f). Nothing in Section 1956(f) purports to alter conspiracy law as it is applied generally or under Section 1956(h); a conspiracy to launder money is unlawful whether or not any money is actually laundered. *Green*, 599 F.3d at 371. As the conduct charged in a Section 1956(h) conspiracy is a criminal agreement, and the substantive provisions of Section 1956 also make plain that an attempt to launder as well as accomplished laundering invokes the statute, the defendant's reading of the statute would immunize a large percentage of the criminal conduct that Congress explicitly addressed by enacting Section 1956, by restricting

extraterritorial application of the statute solely to substantive offenses and carving out both conspiracies and attempts that did not result in successful transactions. At the same time, contrary to the express statutory language and controlling Fourth Circuit precedent, such a reading would also (impermissibly and for the first time) cobble an overt act requirement to a statute that has none. *See Green*, 599 F.3d at 367.

The relevant question in measuring jurisdiction over a conspiracy whose members resided outside the United States is thus whether the conspirators *agreed* to transactions or attempted transactions exceeding $10,000 in value. The Indictment alleges that the conspirators exceeded the threshold in two ways. *First*, Count Three alleges that the conspirators agreed to launder more than $500,000 from at least 14 victims. Though they failed to obtain the $500,000, their lack of success does not undo the criminal agreement they entered. *Second*, Paragraph 17 is even more specific. It alleges that:

- Co-Conspirator 1 set a revised ransom for Victim 1 of €15,200 on October 30, 2013. Indict. at ¶ 17(B). Paragraph 17(F) alleges that Co-Conspirator 1 set a ransom for Victim 2 of €105,000 on November 28, 2013. Paragraph 17(I) alleges that soon after these demands, on or about December 15, 2013, Co-Conspirator 1 sought the defendant's assistance in the scheme to transfer and launder funds obtained from Victim 1 and Victim 2. Paragraph 17(J) alleges that the defendant agreed that same day to transfer and launder those funds.
- Paragraph 17(Z) alleges that on or about March 8, 2014, the conspirators demanded a €20,000 ransom from Victim 3 as part of their overlapping extortion and laundering schemes. Similarly, Paragraph 17(FF) alleges that on or about May 23, 2014, the conspirators demanded a €7500 ransom from Victim 4.

Thus, to the extent the government may be required to satisfy Section 1956(f) prior to adducing its proof at trial, the Indictment provides sufficient notice of some of the proof it will provide to satisfy its burden to demonstrate that the conduct charged is that which Congress proscribes.

## CONCLUSION

For the foregoing reasons, jurisdiction exists over each of the three alleged Counts, and Count Three is properly pleaded. The Motion should be denied in its entirety.

Respectfully submitted,

Dana J. Boente
United States Attorney

/s/

Brandon L. Van Grack
Special Assistant United States Attorney
Maya D. Song
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Ph: (703) 299-3700
Fax: (703) 299-3982
maya.song@usdoj.gov
brandon.van.grack2@usdoj.gov

Scott K. McCulloch
Nathan M. F. Charles
Trial Attorneys
National Security Division
United States Department of Justice

**CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filling (NEF) of the foregoing to the following counsel of record:

Geremy C. Kamens
Federal Public Defender
Eastern District of Virginia
1650 King Street, Suite 500
Alexandria, VA 22314
geremy_kamens@fd.org

*Counsel for defendant Peter Romar*

Dana J. Boente
United States Attorney

By: /s/
Maya D. Song
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: (703) 299-3981
Email: maya.song@usdoj.gov